**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**David Shew FEINMAN,**
**Defendant–Appellant.**

**No. 90–3721.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1991.

Decided April 15, 1991.

Thomas M. Bauer, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Matthew Fortado (argued), Akron, Ohio, for defendant-appellant.

Before MARTIN and BOGGS, Circuit Judges, and BELL, District Judge.*

* The Honorable Robert Holmes Bell, United States District Judge for the Western District of

BOGGS, Circuit Judge.

David Shew Feinman appeals his jury conviction for conspiring to possess marijuana and possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. We find no error requiring reversal of Feinman's conviction, but must remand the case to the district court for the limited purpose of increasing Feinman's offense level by two.

I

On March 1, 1990, Michael Watson was stopped for speeding while heading east on Interstate 70 in the state of Utah. Watson consented to a search of his vehicle, which uncovered 732 pounds of marijuana. Watson was arrested and taken into custody. After questioning, Watson agreed to cooperate with authorities by making a "controlled delivery." Watson told authorities that he was transporting marijuana from California to Akron, Ohio on behalf of David Feinman. Watson indicated that his instructions were to drive to his mother's house in Akron and call Feinman.

On March 5, 1990, the controlled delivery took place. Both Watson and Feinman were under surveillance by federal and state authorities. Watson called his mother, Patricia Watson, and advised her that he was in town; she relayed this message to Feinman. Feinman was observed near his mother's house in a blue Chevy van, driven by Steve Lewis. The two men drove to Patricia Watson's house located on the other side of Akron. Feinman entered the house for a brief period. Feinman then proceeded to get into Watson's truck and both he and Lewis drove off. The vehicles were stopped approximately four blocks away from Watson's house and the two men were arrested.

Both Feinman and Lewis were indicted for conspiring to possess marijuana and possession with intent to distribute marijuana. After the first day of the trial of Lewis and Feinman, Lewis informed the

Michigan, sitting by designation.

court that he wished to enter a guilty plea. The jury was dismissed and a new trial date was scheduled for Feinman. Feinman was later convicted of both counts and was sentenced to seventeen years in prison and fined $150,000.

## II

■■■ On appeal, Feinman raises a number of issues. First, Feinman contends that the government's conduct in arranging the controlled delivery was so outrageous as to violate due process. *See, e.g., United States v. Robinson,* 763 F.2d 778, 785 (6th Cir.1985); *United States v. Brown,* 635 F.2d 1207 (6th Cir.1980). We have articulated four factors to be considered in determining whether the conduct of police officers is so outrageous as to violate due process: (1) the need for the conduct as shown by the type of criminal activity; (2) whether the criminal enterprise preexisted the police involvement; (3) whether the government agent directs or controls the enterprise; and (4) the impact of the police activity on the commission of the crime. *Robinson,* 763 F.2d at 785; *United States v. Norton,* 700 F.2d 1072 (6th Cir.), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983). There is nothing in this record to show that the agents became so intertwined with the conspiracy as to violate due process. No agent became part of the conspiracy; nor did any agent initiate or control any aspect of the conspiracy. They merely enlisted the aid of one member of the conspiracy in order to expose the entire conspiracy.

■■■ During the course of direct examination of the government's first witness, Michael Watson, the Assistant United States Attorney inquired as to how Watson agreed to make this particular delivery:

Q: Now, specifically looking at February of 1990 tell us about this particular job that you accepted with him [Feinman] delivering marijuana.

A: He had had a deal, and he wanted me to work for him, but then he told me no because he was going to go to Hawaii. And we had talked about it

and eventually decided, he told me just to take care of it.

So, he went to Hawaii and there was a 200 pound deal that I went and picked up in northern California. And I brought it home and had a couple of people bring it to Ohio. And then I thought that would be it. And then I was contacted again and told there was more marijuana up there.

And David called me from Hawaii and I told him what was happening. And he said he didn't want to hear nothing about it. He just told me to take care of it. So, I picked up the rest of marijuana.

Feinman argues that Watson's reference to a "200 pound deal" requires a new trial. We disagree. Watson's reference to Feinman's involvement in a "200 pound deal" was not solicited and, strictly speaking, was not responsive to the question. The government did not claim at trial, or does it claim now, that any evidence of Feinman's previous involvement in a "200 pound deal" was admissible as uncharged misconduct under Fed.R.Evid. 404(b). The witness appeared to volunteer this reference to the marijuana because, in his judgment, it was integral to his discussion on how he became involved in this particular delivery. The government did not solicit the "200 pound deal" reference and did not pursue the matter further. We find that, given the force of the other evidence of Feinman's guilt, direct and circumstantial, Watson's unresponsive reference to Feinman's involvement in a "200 pound deal," while improper, was harmless. Fed.R.Crim.P. 52(a).

■■■ In presenting the government's case, there was testimony from a number of witnesses relating to Feinman's involvement in a prior shipment of marijuana being transported into the Akron area from California. Feinman contends that this testimony regarding the prior marijuana shipment was not admissible under Fed.R.Evid. 404(b). Specifically, Feinman claims that the probative value of this evidence was outweighed by its prejudicial impact and therefore should have been excluded by the district court. We disagree.

■ This issue is raised regularly and a review of procedure seems appropriate. A trial court must employ a two-step analysis in determining the admissibility of evidence offered under Fed.R.Evid. 404(b). First, the trial court must ascertain whether the proffered evidence is relevant and admissible for a proper purpose. *United States v. Zelinka*, 862 F.2d 92, 98 (6th Cir.1988). To be relevant, "the evidence must relate to a matter which is 'in issue,' and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." *United States v. Blankenship*, 775 F.2d 735, 739 (6th Cir.1985) (citations omitted). To determine whether the proffered evidence is admissible for a proper purpose, the trial court must decide, "whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 1499, 99 L.Ed.2d 771 (1988).

■ Finally, the court must determine whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403; *Huddleston*, 485 U.S. at 687, 108 S.Ct. at 1500. The district court has broad discretion in balancing probative value against potential prejudicial impact. *United States v. Dabish*, 708 F.2d 240, 243 (6th Cir.1983). We review a district judge's balancing of prejudicial impact and probative value under Fed.R.Evid. 404(b) under an abuse of discretion standard. *United States v. Holloway*, 740 F.2d 1373, 1377 (6th Cir.), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 366 (1984).

The testimony relating to Feinman's involvement in the prior marijuana shipment was properly admitted under Fed.R.Evid. 404(b). This testimony was introduced to illustrate that Feinman was involved in an ongoing scheme to transport large amounts of marijuana from California to Akron, Ohio. This information was highly probative in evaluating Feinman's claim that he was unaware that the truck he was driving when arrested contained over 700 pounds of marijuana. Furthermore, this prior act was similar to, and sufficiently near in time to, the offenses charged in the indictment. This particular transaction took place approximately two months prior to the offence charged in the indictment. *See United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir.1985) (similar acts that occurred two to four years prior were held to be sufficiently near in time to offense charged in the indictment). This transaction also involved the same participants and involved the same mode of operation as was charged in the indictment. With respect to potential prejudice, the district court minimized any possible prejudicial effect by giving a limiting instruction to the jury before this testimony was introduced. As noted, a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad. *Dabish*, 708 F.2d at 243. In the present case, we decline to substitute our judgment for that of the district court.

■ Feinman also argues that Watson's reference to a "200 pound deal" coupled with the evidence concerning his involvement in a prior drug transaction had the effect of creating a "variance" between the indictment and the proof at trial. The indictment charged Feinman with involvement in a drug conspiracy from February 25, 1990 to March 5, 1990. A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. *United States v. Beeler*, 587 F.2d 340 (6th Cir.1978). Not every variation between indictment and proof at trial creates reversible error; only those variances that create "a substantial likelihood" that a defendant may have been "convicted of an offense other than that charged by the grand jury" require reversal. *Beeler*, 587 F.2d at 342 (quoting *United States v. Somers*, 496 F.2d 723, 744 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974)). Another way of stating this standard is that a variance exists, "only when a defendant shows 'prejudice to his ability to defend himself at trial, to general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.'" *United States v. Hathaway*, 798 F.2d 902 (6th Cir.1986)

(quoting *United States v. Miller*, 471 U.S. 130, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985)).

The evidence of Feinman's involvement in marijuana transactions not specifically covered in the indictment did not create a variance requiring reversal. With respect to the evidence admitted under Fed.R.Evid. 404(b), Feinman had ample notice of its intended introduction. Furthermore, the court instructed the jury that the evidence admitted concerning the prior drug transaction was not evidence of Feinman's guilt regarding the charge in the indictment. The other instances of his drug involvement outside the scope of the indictment that were permitted into evidence appear to be isolated and inconsequential. One such example of an "objectionable" statement was made by Patricia Watson during direct examination by the government. Watson testified that Feinman had told her that there was an "extra large load" of marijuana coming into Ohio. This statement might imply that Feinman was involved in other loads of marijuana coming into Ohio. It does not, however, amount to a variance requiring reversal. We believe the admission of this evidence did not prejudice Feinman's ability to defend himself or make the trial fundamentally unfair.

### III

■ Feinman raises two arguments concerning the appropriate application of the Sentencing Guidelines. First, Feinman argues that the district court erred in imposing a two-level enhancement under § 3B1.1(a) of the Sentencing Guidelines for being a leader of an operation involving five or more individuals. United States Sentencing Commission, *Guidelines Manual*, § 3B1.1 (Nov.1990). In cases where the applicability of an enhancement provision is contested, the government bears the burden of establishing the enhancement factors by a preponderance of the evidence. *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir.1989). A district court's finding as to the applicability of § 3B1.1 is a factual finding subject to the "clearly erroneous" standard of review. *United States v. Barrett*, 890 F.2d 855 (6th Cir.1989). We

find that ample evidence exists in the record to support the district court's factual finding.

The testimony adduced at trial supports the factual finding that Feinman was the, "organizer or leader of a criminal activity that involved five or more participants...." *Guidelines Manual*, § 3B1.1. Feinman recruited Watson to be a courier between California and Ohio. Feinman made the arrangements with the suppliers in California. Feinman also made arrangements for distribution of the marijuana in the Akron area, including "fronting" Steve Lewis large amounts for sale. The record contains testimony establishing that Mike Watson, Patricia Watson, John LeBarre and Steve Lewis were all "participants" in Feinman's drug trafficking scheme.

■ Once a sentencing court makes a factual finding as to the applicability of a particular adjustment provision, the court has no discretion, but must increase the offense level by the amount called for in the applicable provision. To permit otherwise would undermine Congress's goal of "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar offenses committed by similar offenders." *Guidelines Manual*, Ch. 1, Pt. A, Introduction 3, p.s. A finding of the applicability of § 3B1.1(a) requires a four-level enhancement in a defendant's offense level. In this case the district court only increased Feinman's offense level by two points. Therefore, we must remand this case to the district court with instructions to increase the defendant's offense level by the appropriate amount.

■ Feinman also argues that the district court erred in departing from the Sentencing Guidelines by increasing his criminal history from category V to category VI. Under the Sentencing Guidelines, the district court must calculate two variables: the defendant's offense level and his corresponding criminal history category. The two variables are then applied to the Guidelines' sentencing table to establish the sentencing range. Section 4A1.1 of the Guidelines outlines the procedure to calculate a defendant's criminal history category. Us-

ing this procedure, the district court determined that Feinman's criminal history amounted to twelve points, which corresponded to criminal history category V. This criminal history category, coupled with an offense level of 30, would have produced a guideline range of 151 to 188 months. The district court, finding that a criminal history level of V did not accurately reflect Feinman's criminal record, increased his criminal history to category VI, producing a guideline range of 160 to 210 months. The district court relied upon § 4A1.3 of the Guidelines to justify this departure. Section 4A1.3 provides, in pertinent part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.
>
> . . . .
>
> A departure under this provision is warranted when the criminal history category significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes.

*Guidelines Manual*, § 4A1.3.

■ The Sentencing Guidelines require a district court to impose a sentence within the applicable guideline range "unless the court finds there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). "The guidelines, commentaries, and policy statements clearly indicate that departures should be rare." *United States v. Brewer*, 899 F.2d 503, 506 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990) (quoting *United States v. Uca*, 867 F.2d 783, 787 (3d Cir.1989)). A court can consider only the Sentencing Guidelines, policy statements, and official commentary of the Sentencing Commission in determin-

ing whether the Sentencing Commission adequately took a particular factor into account. *See* 18 U.S.C. § 3553(b). If circumstances relied upon by the district court were adequately considered by the Sentencing Commission, then its decision to depart is inappropriate. *See* 18 U.S.C. § 3742(f)(1).

■ After conducting this analysis, a court may depart from the Sentencing Guidelines, but must provide the "specific reason" for the departure. 18 U.S.C. § 3553(c)(2). This requirement is satisfied by "a short clear written statement or a reasoned statement from the bench" that identifies the aggravating factors and its reasons for connecting them to the permissible grounds for departure. *United States v. Kennedy*, 893 F.2d 825, 827 (6th Cir.1990); *United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990). When departing from the Guidelines because a particular criminal history category is inadequate, the district court must look to the next higher criminal history category as a reference before otherwise departing from the Guidelines. *Kennedy*, 893 F.2d at 829.

■ This court applies a three-part analysis to determine the propriety of a district court's departure under the Guidelines. The first part of this analysis requires us to determine whether the circumstances relied upon by the district court in departing from the Guidelines are sufficiently "unusual" to warrant departure. *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989) (adopting the three-part test enunciated in *Diaz–Villafane*). This inquiry requires us to consider whether the circumstances relied upon by the district court to justify the departure were already adequately taken into consideration by the Sentencing Commission so as to preclude departure. *See Guidelines Manual* § 5K2.0. Our review of this question is plenary. *Joan*, 883 F.2d at 494. We next determine whether those circumstances ac-

tually exist in the particular case. *Id.* In cases where there is a dispute as to the existence of facts that would warrant departure, the government bears the burden of establishing those facts by a preponderance of the evidence. *United States v. Silverman*, 889 F.2d 1531, 1535 (6th Cir. 1989). We review only for clear error the district court's decision that a factual basis exists justifying the departure. *Joan*, 883 F.2d at 494; *see also United States v. Belanger*, 892 F.2d 473 (6th Cir.1989).

The final part of our analysis requires us to measure the degree and direction of departure from the Guidelines under a standard of reasonableness. *Joan*, 883 F.2d at 494; *Belanger*, 892 F.2d at 475. "Reasonableness is determined by comparing the reasons for imposing a given sentence in general with the reasons for imposing a sentence in the particular case, as stated by the District Court." *Belanger*, 892 F.2d at 475.

We believe that the district court complied with this test, and that its decision to depart upward was reasonable in kind and in degree. Section 4A1.3 specifically authorizes a departure under two circumstances: when the facts show that the criminal history category (1) underrepresents the seriousness of the criminal history or (2) underrepresents the likelihood of recidivism. We believe that the court's explanation of the departure implicates both of these concerns. The court made the following comments:

> With respect to the criminal history category, the Court turns to the provision of the commentary, 4A1.1, and in addition in the so-called related cases, and the Court finds that the 12 points really do under-represent the seriousness of the defendant's criminal history, and the danger he presents to the public.
>
> This criminal history of the defendant is extensive.
>
> The defendant is now I believe nearly 43, and he has not outgrown his long-term associations with the drug culture.
>
> The evidence in this case indicates that he finds it to be very profitable, and the testimony is that the courier that trans-

ported the first load of marijuana back in December of 1989 was paid $14,000 in cash, and was promised $22,000 in cash for the delivery that was intercepted. This is an extraordinary sum of money. . . .

> —and of course the Court has given the defendant the benefit of the doubt with respect to whether or not the offenses listed as 37 and 38 in the Presentence Report—but even those two convictions indicate a long-term association with the drug culture, and at that time the drug of choice at that point was heroin.
>
> In 1972 the drug of choice was cocaine, and in this case it just happened to be marijuana.

The economic benefit to Feinman, when coupled with his past history, gives reasons why he is likely to continue in that trade when he emerges from prison, rather than simply being a negative reaction to the accumulation of criminal wealth. Similarly, the judge apparently believes that a long-time continued association with the drug trade, through a number of years and a number of types of drugs, is more serious than a random accumulation of points might have been. This is not simply a case where a defendant's prior convictions are unrelated, as in a case where a defendant had been convicted of auto theft, assault, illegal possession of a dead bald eagle, and drug trafficking. Feinman's continued pursuit of lucre through the sale of drugs is a consistent pattern of his life, and the judge's consideration of the likelihood of recidivism is precisely the type of consideration that section 4A1.3 allows to be basis for an upward departure. In sum, we find this case to implicate "unusual" circumstances under the first part of the *Joan* test.

■ The second part of the *Joan* test is easily met, as there is no dispute regarding Feinman's prior criminal history. Finally, we believe that the one step increase is Feinman's criminal history, being the smallest possible increase available to the judge, is "reasonable" within the meaning

of the third part of the *Joan* test.[1] Thus, the court's opinion is sufficiently specific to pass our review. *Kennedy*, 893 F.2d at 827.

For the foregoing reasons, we affirm Feinman's conviction and remand the case to the district court for resentencing in conformity with this opinion.

BOYCE F. MARTIN, Jr., Circuit Judge, concurring in part and dissenting in part.

Although I join the majority's opinion in concluding that Feinman's conviction should be affirmed, I dissent with respect to that portion of the majority's opinion which affirms the district court's upward departure of Feinman's criminal history category. Under § 4A1.1 of the Sentencing Guidelines, a defendant's criminal history is computed by assigning a given number of points to that defendant's prior criminal activity and then simply adding up those points. United States Sentencing Commission, *Sentencing Guidelines*, § 4A1.1 (Nov.1990). For example, a defendant is assigned three points "for each prior sentence of imprisonment exceeding one year and one month." *Sentencing Guidelines*, § 4A1.1(a). In this case, the district court calculated that Feinman's prior criminal involvement resulted in an accumulation of twelve points. It is important to note that *all* of Feinman's previous convictions were counted in calculating his criminal history points. Applying this number to the Guidelines' sentencing table, Feinman's criminal history points corresponded to level V.

The district court found that a criminal history level of V did not accurately reflect Feinman's criminal history and thus increased his criminal history to category VI. The majority upheld this departure as being justified under the Guidelines. I do not think the reasons given by the district court were sufficient under the Guidelines. In fact, I feel that the language of the Guidelines specifically prohibits such a departure. The district court increased Feinman's criminal history category because it felt that a criminal history category of V did not accurately reflect Feinman's criminal record. Specifically, the district court noted that Feinman found the drug business to be very profitable and had a "long-term association with the drug culture...."

Section 4A1.3 of the Guidelines permits a district court to upwardly depart from a defendant's criminal history category when that criminal history category "significantly under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." *Sentencing Guidelines*, § 4A1.3. This section goes on to list examples of situations which warrant departure under this section:

[A] defendant who (1) had several previous foreign sentences for serious offenses, (2) had received a prior consolidated sentence of ten years for a series of serious assaults, (3) had a similar instance of large scale fraudulent misconduct established by an adjudication in a Securities and Exchange Commission enforcement proceeding, (4) committed the instance offense while on bail or pretrial release for another serious offense or (5) for appropriate reasons, such as cooperation in the prosecution of other defendants, had previously received extremely lenient sentence for a serious offense.

*Id.* What is apparent from these examples provided by the drafters of the Guidelines is that departure under this section is justified only when a defendant's criminal

---

**1.** We reject the notion that a district court judge must, in addition to specifically explaining the rationale behind his upward departure, specifically explain why he believes those reasons were inadequately represented in the Guidelines. *See United States v. Michel*, 876 F.2d 784, 786 (9th Cir.1989). Any problem that might ensue from an inadequate appreciation for the Guidelines is taken into account in the first part of the three-part *Joan* test.

We also do not believe that a contrary result is compelled by our decision in *United States v. Robison*, 904 F.2d 365, 372 (6th Cir.), *cert. denied sub nom. Smoot v. United States*, —— U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). We cited *Michel* in dicta in *Robison*, and did not rely on it for our holding.

record is somehow not taken into consideration in determining that defendant's criminal history. In this case, it is undisputed that *all* Feinman's prior criminal activity was considered and counted in determining his original criminal history category of V. For it is only when past criminal activity is not counted by the Guidelines that a defendant's criminal history could be under-represented.

The majority opinion reasons that the economic benefit Feinman has found in the drug trade coupled with his past history of criminal involvement provide a strong likelihood that Feinman will continue to be involved in the drug trade after his time is served. This, in fact, might be true. However, the majority has neglected to explain how this likelihood of recidivism was not adequately taken into consideration by the original calculation of Feinman's criminal history category. As one might expect, as the criminal history category increases, so too does the possible length of incarceration. One reason for this is the high likelihood of recidivism among those individuals who have a long criminal history. The Guidelines note, "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation." *Sentencing Guidelines*, § 4A1.1, intro. comment. Thus, the very nature in which the criminal history category is calculated takes into consideration the increase in the likelihood of recidivism in those individuals who have an extensive criminal history.

The fact that an individual finds criminal activity to be profitable would probably increase the likelihood of that individual's engagement in criminal activity. As a matter of course, I do not dispute this assertion. I do, however, dispute whether the Guidelines permit such a fact to be used to justify a departure under § 4A1.3. The Guidelines make *one* factor relevant in determining a defendant's criminal history category, that defendant's past criminal activity. Specifically, the Guidelines look to both the number and length of the defendant's prior sentences, the status of the defendant when he committed the instant offense, and the time between the instant offense and the defendant's prior offenses.

*Id.* The Guidelines recognize that other factors might exist to predict the likelihood of recidivism:

> [t]he specific factors included in § 4A1.1 and § 4A1.3 are consistent with the existent [sic] empirical research assessing correlates of recidivism and patterns of career criminal behavior. While empirical research has shown that other factors are correlated highly with the likelihood of recidivism, *e.g.*, age and drug abuse, for policy reasons they were not included here at this time.

*Id.* Although the drafters of the Guidelines specifically decided "for policy reasons" not to include other relevant indicators of recidivism, *i.e.* age and drug abuse, the majority has felt authorized to make criminal profitability relevant to the calculation of a defendant's criminal history category.

The district court also justified its departure under § 4A1.3 because Feinman had a long history of involvement with the drug culture. The majority felt this to be adequate under § 4A1.3 because a long-term association with the drug trade is of a more serious nature than random unrelated criminal activity. This presents the same problem as the court's previous justification; under § 4A1.1 the fact that all of Feinman's convictions were for drug related activities is irrelevant. What is relevant is that all of those convictions were counted in calculating his criminal history points. *See United States v. Kennedy*, 893 F.2d 825, 828 (6th Cir.1990) ("long history of violation of the law" insufficient to justify departure). The Guidelines judge the seriousness of criminal activity by the length of the defendant's prior sentences. If a defendant received a prior sentence of imprisonment exceeding one year and one month he receives three points toward his criminal history, for a sentence of at least sixty days, he receives two points, and so on. *See Guidelines Manual*, § 4A1.1.

The seriousness of a defendant's criminal history would be under-represented in those cases where for some reason the sentence the defendant received did not adequately reflect the seriousness of the

criminal activity. The Guidelines list some of these situations, such as when a defendant receives an extremely lenient sentence or when the defendant committed a number of different crimes but received only one long sentence. In this case, there is nothing in the record to indicate that Feinman's criminal activity was underrepresented by his prior convictions. The Guidelines do not make the nature of criminal activity relevant, in and of itself; the nature of the criminal activity only becomes relevant when it is compared to the sentence the defendant received for it.

It is important to realize that the district court did not depart in this case under § 5K2.0. That section authorizes departure in those cases where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." *Id.* at § 5K2.0. Accordingly, under § 5K2.0, a sentencing judge is authorized to depart from the Guidelines when there is a specific characteristic of the offense which is not adequately taken into consideration by the Guidelines. In this circumstance, the sentencing judge has wide discretion in determining which relevant factors justify departure. The only limitation placed upon the sentencing judge is that factor cannot already be adequately taken into consideration by the Guidelines. This court has upheld such upward departures in a variety of situations, for example, in *United States v. Lucas*, 889 F.2d 697 (6th Cir.1989), we concluded that a district court may depart upward to account for psychological injury to robbery victims because the Guidelines address psychological injuries. *Id.* at 701; *see also United States v. Pulley*, 922 F.2d 1283 (6th Cir.1991) (departure appropriate based upon defendant's action in persuading family members to commit perjury). A sentencing judge does not enjoy this level of freedom in departing under § 4A1.3; the Guidelines have already determined what factors are "relevant" to the calculation of criminal history.

Therefore, for the foregoing reasons, I dissent from this portion of the majority's opinion.