991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Appellee,
v.
Carroll SON, Susan Grace, Appellants.
 Nos. 92-5300, 92-5303.
 United States Court of Appeals, Sixth Circuit.
 March 31, 1993.
 
 Before JONES and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 This is a consolidated appeal from the jury convictions of Carroll Son and Susan Grace on marijuana-related charges for which each was sentenced to 121 months' imprisonment, a $3,000 fine and 5 years' supervised release following imprisonment. On appeal, both defendants contend that the evidence was insufficient to support their convictions and thus, the district court committed reversible error in denying their timely motions for acquittal. Carroll Son also argues that the district court committed reversible error in admitting "other crimes" evidence contrary to the provisions of FED.R.EVID. 404(b). Carroll Son submitted his appeal on briefs and counsel presented an oral argument in addition to briefs on behalf of Susan Grace.
 
 I.
 
 2
 The defendants, together with another person whose appeal is not before us, were charged in a one count indictment, which stated that the defendants "aided and abetted by each other, did knowingly and intentionally manufacture approximately 2,600 marijuana plants, a Schedule I controlled substance, as defined by Title 21, United States Code, Section 812."
 
 A.
 
 3
 In the spring of 1990, the Kentucky State Police received information that marijuana was being grown in a remote area of Lyon County, Kentucky. On May 13, Detective William Potter of the State Police surveyed the field. He observed various plant beds filled with marijuana plants, jugs containing blue liquid that he assumed to be a fertilizer, a chain saw, a rectangular plastic bucket, a tiller, and an empty bag that appeared to have contained humus. Potter saw no one in the vicinity of the patches at this time. Potter returned the next day and saw two individuals near the plant bed but could not identify them or tell what they were doing. Later, following the arrest of the defendants, Potter testified that he recognized Carroll Son as one of the two persons near the marijuana.
 
 
 4
 On May 15, members of a State Police Special Response Team (SRT) positioned themselves near the marijuana patches. At approximately 12:30 p.m., two vehicles approached the site. Susan Grace was driving a black Ford car and was accompanied by Opal Son, the other defendant. Carroll Son was driving a brown van. Earlier in the morning, the SRT members had observed the same brown van in the area. Both vehicles were parked in positions where it would be difficult to observe them from the road.
 
 
 5
 The defendants left the vehicles and were seen near the patches but no witness testified that he was able to directly observe any defendant in the act of "manufacturing" marijuana. One witness testified that he observed Carroll Son carrying a bag of humus toward the plants.
 
 
 6
 The defendants were arrested in one of the marijuana patches. The search of Carroll Son's van disclosed items that could be used to cultivate marijuana. At trial the government produced evidence that the tiller which was found in the patches was of the same make and model as a tiller that George Grace, Susan Grace's husband, had bought from Southern States. There was also a bucket at the patches that was similar to one found in the Grace home. George Grace's chain saw was in one of the patches as well. The defendants claimed they were in the area to cut fire wood.
 
 B.
 
 7
 Carroll Son argues that the government produced no evidence at trial which indicated that he performed any act to manufacture marijuana. He was not observed cultivating or in possession of marijuana and he did not own the land on which the crop was found. Further, he contends that the items seized from his van were all consistent with legal gardening; he had sixteen tomato plants and eight pepper plants in his van at the time of his arrest. He argues that his presence in the vicinity of growing marijuana was the only link the government established between him and the illicit crop. The government responds that Carroll Son was seen near the marijuana patches on at least two separate occasions and that on May 14 he was observed watching some other person perform some sort of repetitive act near the plants. Further, the materials that he brought to the area indicated a large scale cultivation of some crop, not just a small garden. These materials consisted of two bags of humus, presumably to be used as fertilizer, and entire cases of deer and rabbit repellant, much more than would be required for a small garden. In addition, the police found a sprayer in the patches that matched one found in his van.
 
 
 8
 Susan Grace argues that there is absolutely nothing in the evidence upon which she could be convicted. The fact that she was walking around the field does not provide evidence that she was associated with a criminal act. Susan Grace had allowed Carroll Son to borrow her husband's chain saw, but this was consistent with her claim that she went to the area to get firewood. None of the marijuana had large enough stalks to require a chain saw for harvesting and there was evidence that trees had been cut in the area. Further, although the tiller found in the marijuana patch was similar to one that her husband had owned, she testified that her husband had sold the tiller some time before May 1990. She produced a witness who testified that he indeed had sold the tiller for Susan Grace's husband. In addition, the government completely failed to identify the tiller in the marijuana patch, by serial number or otherwise, as the one formerly owned by Susan Grace's husband. With respect to the plastic bucket found in the Grace residence that was similar to one found near the marijuana patch, Susan Grace produced evidence that buckets of this description were owned by large numbers of people in the area and were often sold at flea markets.
 
 
 9
 The government responds that Susan Grace parked her car in such a way as to conceal it from passing motorists and that she was observed conversing with Opal Son while looking at the plants. The government argues that she associated herself with the illegal activity by accompanying the Sons to the patch and providing instrumentalities used in cultivation of the crop. This refers to the tiller that was similar to one previously purchased by George Grace and the plastic bucket like the one found in the Grace residence.
 
 II.
 
 10
 When a convicted person relies upon insufficiency of the evidence, we must affirm a jury's guilty verdict unless we determine that no rational trier of fact could have found, beyond a reasonable doubt, that the convicted defendants committed the offenses charged. United States v. Morrow, 977 F.2d 222, 230 (6th Cir.1992). In making this determination, we must view the evidence in the light most favorable to the government. Aiding and abetting has been described as "one's desire to in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." Id. (quoting United States v. Peoni, 100 F.2d 401, 402 (2d Cir.1938) (citations and interior quotation marks omitted).
 
 A.
 
 11
 It seems clear to us that the evidence against Carroll Son was sufficient to support the jury's verdict, and the district court did not err in denying his motion for acquittal. Although Carroll Son was never observed planting or cultivating the marijuana, the circumstantial evidence associating him with the crop was extremely strong. He visited the marijuana patches on consecutive days, appeared to be overseeing another person working in one of the patches, and transported equipment and materials to the growing area that a rational jury could have found to be used in growing the crop.
 
 
 12
 Carroll Son asserts that this circumstantial evidence would clearly have been insufficient to support his conviction except for the highly prejudicial testimony of a government witness that she had seen Opal and Carroll Son cut the leaves or buds off of marijuana plants and put them into garbage bags some six months prior to the arrests. The government produced this evidence to prove that Carroll Son was familiar with marijuana and to show that he was not at the scene of the illegal crop by accident or mistake. Carroll Son argues that the district court should not have permitted the jury to hear this evidence, that it was inadmissible under Rule 404(b) and was highly prejudicial.
 
 
 13
 When "other crimes" evidence is offered and objected to, a trial court must employ a two step analysis. First, the court must determine that the proffered evidence is relevant and admissible for a proper purpose and, second, the court must determine that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991). The admission of such evidence is reviewed under an abuse of discretion standard, and the district court "has broad discretion in balancing probative value against potential prejudicial impact." Id. (citation omitted).
 
 
 14
 The district court engaged in the required analysis, and we conclude that it did not commit reversible error in permitting the testimony describing Carroll Son's prior association with marijuana plants. This defendant took the witness stand and denied any involvement in the growth of marijuana in the area of his activities and his arrest and claimed he was there solely for the purpose of gathering firewood. He stated that he didn't recognize the plants because he had never seen marijuana except on television. The disputed evidence was offered to counter Carroll Son's contention that he was unaware that marijuana was being grown in the area that he chose to gather firewood. If believed, this evidence certainly established Son's familiarity with marijuana and at least some aspect of marijuana processing.
 
 
 15
 As to the second step of the Rule 404(b) analysis, the defendant's claim of innocent presence and ignorance of the nature of the crop made the disputed testimony probative of the reason for his presence. In light of the totality of the evidence connecting Carroll Son to the marijuana crop, we do not believe that the prejudicial effect of this particular testimony substantially outweighed its probative value. It is important to note that the district court gave limiting instructions to the jury concerning the proper uses for this particular testimony, both following the testimony and at the close of the trial. Such instructions go far toward eliminating any prejudice that might result from the testimony. The district court did not abuse its discretion in denying Carroll Son's motion to exclude the disputed evidence.
 
 B.
 
 16
 After reviewing all the proof concerning Susan Grace, we conclude that the government failed to produce sufficient evidence that Ms. Grace associated herself with the marijuana activities and participated in them as something she desired to bring about or took any action to make the venture succeed. Morrow, 977 F.2d at 230. There was not evidence that she purchased seeds or planted them, that she ever worked in the patches, or that she was in the area on any other occasion than the time of her arrest. Although the similarity of the tiller and bucket found in the area of the growing marijuana to those associated with her husband raised a suspicion that she had taken some action to further the marijuana-growing venture, the government failed completely to prove that the tiller found in the area was the same one owned by her husband and she produced testimony that her husband had sold that tiller some time previously. With respect to the plastic buckets, the only evidence concerning their availability and presence in the area was that they appear frequently at sales and flea markets and that many residents of the county own such buckets.
 
 
 17
 The evidence connected Carroll Son with the growing crop in concrete ways, but we believe that as to Susan Grace that this was a "mere presence" case, and that the jury convicted her on the basis of her presence and her relationship to Carroll Son's wife, who was her sister. This is not enough. We have held that mere presence at the scene of a crime, even when coupled with guilty knowledge, is not sufficient to support a conviction. Instead, the defendant must be shown to be " 'a participant rather than merely a knowing spectator' before [s]he can be convicted of aiding and abetting." United States v. Winston, 687 F.2d 832, 835 (6th Cir.1982) (quoting United States v. Bryant, 461 F.2d 912, 921 (6th Cir.1972).
 
 
 18
 The conviction of Carroll Son is affirmed and that of Susan Grace is reversed. The charges against Susan Grace must be dismissed.