7 F.3d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
William Arnold STRONG, Defendant-Appellant.
 No. 93-1048.
 United States Court of Appeals, Sixth Circuit.
 Sept. 15, 1993.
 
 Before: KENNEDY and RYAN, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 Defendant William Strong appeals his conviction and sentence for aiding and abetting in the receipt and concealment of stolen firearms, in violation of 18 U.S.C. §§ 922(j) and 2. Strong's appeal raises two issues: 1) whether the district court erred when it admitted evidence of defendant's prior conviction under Fed.R.Evid. 404(b); and 2) whether the evidence sufficiently supports the jury's guilty verdict.
 
 
 2
 Because we conclude that the district court erred when it admitted the Rule 404(b) evidence, we shall reverse and remand for retrial.
 
 I.
 
 3
 In June 1991, while working undercover, Bureau of Alcohol, Tobacco and Firearms Agent Kevin Zott purchased a stolen twelve-gauge shotgun from Clyde Dettor in Detroit, Michigan. Agent Zott asked Dettor about purchasing other stolen firearms for Zott's friend, "Mark." Dettor told Zott that his source, "Johnny," had approximately 200 additional stolen firearms for sale for $15,000. Zott and Dettor tried to negotiate a deal. When their efforts to reach an agreement failed, one of Dettor's contacts, "Tom," negotiated with Agent Zott via telephone. Zott later learned that "Tom" was John Strong, defendant William Strong's brother. Most of Zott's telephone conversations with John Strong were tape-recorded. John Strong eventually agreed to allow Agent Zott to see the guns before finalizing the deal, but he indicated that someone else, who lived faraway, had the guns and would have to drive them "down" to the Detroit area in the back of a pickup truck. Strong told Zott that he would contact him later that evening after Strong's partner arrived in Detroit with the weapons. Telephone records later revealed that at least three telephone calls were made between John Strong's and defendant William Strong's home just before and immediately after John Strong told Zott he could see the weapons. Agents later learned that William Strong lived north of Detroit and west of Port Huron in Emmett, Michigan, and that it takes slightly over one hour to drive from Emmett to Detroit.
 
 
 4
 Later that evening, Dettor called Agent Zott, told him that the guns arrived, and instructed him to meet at Dettor's house to inspect the guns. When Zott arrived, Dettor, John Strong, and James Hodge led Zott to a Ford pickup truck, which Zott later learned belonged to William Strong. The pickup truck held several boxes and camouflaged carrying cases filled with guns. John Strong told Agent Zott that the guns came from over 200 miles away. Zott telephoned "Mark," who was actually his ATF supervisor, Mark Hady, for further instructions. Agent Hady instructed Zott to take John Strong to a K-Mart parking lot ostensibly to complete the deal and transfer the $15,000. Once Zott and John Strong arrived at the parking lot, Strong was arrested by ATF agents. Later in the ATF lockup, Hady discovered, in John Strong's wallet, an inventory list of the firearms in the pickup.
 
 
 5
 Meanwhile, before Agent Zott arrived at Dettor's home to inspect the weapons, several ATF agents conducted surveillance operations in Dettor's neighborhood. The agents noticed a dark-colored Pontiac Sunbird in Dettor's garage. Later, agents noticed three men in the same Sunbird driving around Dettor's neighborhood. For approximately one hour, agents spotted the Sunbird slowly cruising the area, and they suspected that the three men were engaging in counter-surveillance. At one point before John Strong's arrest in the K-Mart parking lot, agents believed that the Sunbird's occupants spotted them changing into their ATF protective gear in a bar parking lot. As a result, the agents stopped the Sunbird and arrested its occupants--defendant William Strong, who was driving, his brother Joseph Strong, and Richard Caughill. The Sunbird was registered to Cheryl Knapchuck, sister of William, Joseph, and John Strong.[1] Agents later learned that the pickup truck carrying the guns belonged to William Strong. After he was arrested and was read his Miranda[2] rights, William Strong provided the agents with a written statement that his brother John had borrowed the truck one week earlier to move "stuff." According to William's statement, he did not know what "stuff" John intended to move.
 
 
 6
 After Caughill and the three Strong brothers were arrested, agents returned to Dettor's home, arrested Dettor, and seized 175 guns from the back of William Strong's pickup truck. All the guns had been stolen from a sports shop in St. Charles, Michigan, a small town north of Detroit.
 
 
 7
 Subsequently, a federal grand jury returned a three-count indictment against William Strong, John Strong, Joseph Strong, Clyde Dettor, and Richard Caughill. The indictment specifically charged William Strong with one count of conspiracy to receive and conceal stolen firearms, in violation of 18 U.S.C. § 371, and one count of receiving and concealing stolen firearms and of aiding and abetting, in violation of 18 U.S.C. §§ 922(j) and 2. John Strong and Dettor pled guilty prior to trial, but William Strong, Joseph Strong, and Richard Caughill proceeded to trial. The jury acquitted Joseph and Caughill on both counts. Although the jury acquitted William of the conspiracy charge, it could not reach a verdict on the charges of receiving and concealing stolen firearms and aiding and abetting.
 
 
 8
 Prior to William Strong's retrial for the remaining federal charge, the government moved in limine to admit evidence of William and John Strong's prior convictions. William and John Strong and a third individual had been arrested for a January 22, 1990, break-in at a pizzeria. After William's first federal trial for the receipt of stolen firearms charges but before his retrial, William and his brother pled guilty to state charges of breaking and entering the pizzeria with the intent to commit larceny. At the federal retrial, which we now review, the government moved to admit the conviction evidence. William objected, but the court allowed in the evidence as proof that William knew that his brother intended to use William's truck during the firearms transaction.
 
 
 9
 At trial, William's defense was that he did not know about John Strong's involvement with the stolen guns or what John Strong planned to do with his truck, and that he just happened to be driving in Dettor's neighborhood when he was arrested. The government introduced testimony by a handwriting expert that it was possible that William was the author of the inventory list found in John Strong's wallet. The government also introduced the testimony of the agents who conducted the sting operation and who arrested the alleged coconspirators, the taped telephone conversations with Zott, and certified copies of the state charging and conviction documents. After the prior conviction evidence was admitted, the court instructed the jury that the prior conviction evidence could only go toward establishing William's knowledge about the stolen guns. The court cautioned the jury about considering William's prior conviction for other improper purposes.
 
 
 10
 The jury eventually returned a guilty verdict, finding that William Strong aided and abetted John Strong in the receipt and concealment of stolen firearms. Within seven days of the verdict, William moved for new trial pursuant to Fed.R.Crim.P. 33 on the basis that his prior conviction was improperly admitted, and for judgment of acquittal pursuant to Rule 29 on the basis that the evidence was insufficient to support the verdict. The motions were denied, and defendant filed this timely appeal.
 
 II.
 
 11
 Defendant argues that the district court "abused its discretion" when it admitted the evidence of his prior conviction because the evidence was not relevant and was unduly prejudicial. According to the defendant, the error was not harmless, and he must be granted a new trial.
 
 
 12
 We review 404(b) evidence to determine whether the evidence is relevant, admissible for a proper purpose, and unduly prejudicial. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991). Thus, when evaluating a district court's determination under Rule 404(b), we apply an abuse of discretion standard of review only for the district court's balancing of probative value against unfair prejudice, but we give de novo review to the district court's determination of the underlying admissibility of the other acts evidence. United States v. Fountain, 1993 WL 293882, Nos. 92-1507, 1866 (6th Cir. Aug. 9, 1993).
 
 
 13
 Under Fed.R.Evid. 404(b), evidence of other bad acts "is not admissible to prove the character of a person in order to show that he acted in conformity therewith." The rule provides, however, that such evidence may be admissible "for other purposes, such as proof of motive, ... intent, ... knowledge ... absence of mistake or accident...." Fed.R.Evid. 404(b). To determine the admissibility of evidence under Rule 404(b), the district court must: 1) "ascertain whether the proffered evidence is relevant and admissible for a proper purpose"; and 2) "determine whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice' " (Rule 403 balancing). Feinman, 930 F.2d at 499.
 
 
 14
 To be relevant, "the [Rule 404(b) ] evidence must relate to a matter which is in issue, and must deal with conduct substantially similar and reasonably near in time to the offenses for which defendant is being tried." United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985); see also Feinman, 930 F.2d at 499. William's defense was that he did not lend his truck to John with knowledge or the intent that it be used for the stolen firearms. He also claims that his presence in Dettor's neighborhood while Zott and John completed the firearms sale was coincidental. The government argues that the evidence of William's and John's prior convictions has a tendency to show that William knew his brother John intended to use William's truck for the stolen firearms, that he knew about the attempted sale to Zott, and that he was conducting counter-surveillance to protect John.
 
 
 15
 Clearly, William's knowledge that his truck would be used to transport the stolen weapons and his intent to aid and abet in their receipt and concealment are in issue, and thus a proper basis for 404(b) evidence. We conclude, however, that the evidence of William's prior conviction for the pizzeria break-in was not probative of his culpable knowledge and intent in this case. The fact that William and his brother broke into a pizza store in January 1990 does not have any tendency to make it more probable than it would be without the conviction evidence that William Strong knew his brother planned to use his truck for illegal purposes when he asked to borrow it in June 1991. There simply is no logical nexus linking the prior conviction evidence to the proposition the government claims the evidence tends to prove. That William committed the crime of breaking and entering a year and one-half before the charged crime of this case does not establish his knowledge in this case and can only suggest the forbidden inference of criminal propensity.[3] Because the evidence is not relevant to prove the proposition for which it was offered, the court erred in admitting it.
 
 
 16
 The court's error in admitting the 404(b) evidence is subject to harmless error analysis. Where an error is not of constitutional dimension, it is harmless unless "one cannot say, with fair assurance" that the error did not materially affect the defendant's substantial rights. Kotteakos v. United States, 328 U.S. 750 (1945). "Whether the improper admission of evidence under F.R.E. 404(b) constitutes prejudicial error or harmless error must be decided on the facts of each case." United States v. Ismail, 756 F.2d 1253, 1260 (6th Cir.1985). This court should consider the record as a whole "from the perspective of how the error might have affected the jury." Id. The test is:
 
 
 17
 "If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather ... whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."
 
 
 18
 Id. at 1260-61 (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1945)).
 
 
 19
 We are not convinced that the error was harmless in this case. The other evidence against William, while perhaps sufficient to support the jury verdict, is not overwhelming and is circumstantial. Furthermore, in William's first trial on the receiving stolen weapons charges, the prior conviction evidence was not admitted and the result was a hung jury. Given the highly prejudicial nature of prior conviction evidence, we cannot say with "fair assurance" that the error did not affect the verdict in the second trial.
 
 
 20
 Defendant also argues that all the evidence against him is circumstantial and is insufficient to support the verdict; therefore, according to Strong, the district court should have granted his motion for judgment of acquittal.
 
 
 21
 As an initial matter, the fact that the conviction is reversed due to the district court's 404(b) evidentiary error does not obviate the need for us to review William's sufficiency of the evidence claim. See Delk v. Atkinson, 665 F.2d 90, 93 (6th Cir.1981). If the evidence is insufficient to sustain the verdict, principles of double jeopardy preclude retrial and judgment of acquittal must be entered. Burks v. United States, 437 U.S. 1, 18 (1978).
 
 
 22
 A motion for judgment of acquittal should be granted "if the evidence is insufficient to sustain a conviction" on the charged offense. Fed.R.Crim.P. 29(a). "The proper standard for evaluating a motion for judgment of acquittal is whether, considering the facts in the light most favorable to the government, there is evidence from which a jury might find the defendant guilty beyond a reasonable doubt. If such evidence exists, the motion must be denied." United States v. Gorman, 807 F.2d 1299, 1030 (6th Cir.1986), cert. denied, 484 U.S. 815 (1987). " '[C]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.' " United States v. Ashworth, 836 F.2d 260, 263 (6th Cir.1988) (citation omitted).
 
 18 U.S.C. § 922(j) provides, in part:
 
 23
 It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm ... which constitutes, or which has been shipped or transported in, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.
 
 
 24
 Furthermore, "[w]hoever commits an offense against the United States or aids, abets, ... or procures its commission, is punishable as a principal." 18 U.S.C. § 2.
 
 
 25
 Sufficient evidence supports the verdict against William Strong. Furthermore, the evidence, although circumstantial, indicates William assisted John in the attempted sale by providing the truck, perhaps by transporting the weapons himself, and by conducting counter-surveillance as John negotiated the deal with Agent Zott. As the district court concluded:
 
 
 26
 (1) the guns were transported in a vehicle owned by Defendant; (2) John Strong's telephone records reveal calls to Defendant immediately following conversations between John Strong and ATF Agent Zott; and (3) the Defendant was observed driving a car known to be used by John Strong in the neighborhood at the approximate time of the undercover transaction.
 
 
 27
 Relying on this evidence, a rational trier of fact could have found, beyond a reasonable doubt, that William Strong knew what his brother planned to do with the truck and that William intended to assist his brother John in the illegal gun sale. The district court did not err when it denied the motion for judgment of acquittal.
 
 
 28
 We emphasize that there is no inconsistency in holding, on the one hand, that there is sufficient evidence, outside of the prior conviction evidence, to support a guilty verdict, and, on the other hand, that the error in admitting the prior conviction evidence may have materially affected the jury's verdict. The sufficiency of the evidence standard and the harmless error standard are not the same. Although sufficient, properly admitted evidence supports Strong's conviction for aiding and abetting in the receipt of stolen firearms, we cannot know whether the jury, in convicting Strong, relied entirely upon the properly admitted evidence or, instead, relied, in part, upon the improperly admitted prior conviction, drawing the forbidden inference that "because Strong committed a crime with his brother before, he probably did it again."
 
 III.
 
 29
 Because the district court erred in admitting evidence of William Strong's prior conviction, we REVERSE the conviction and REMAND for retrial.
 
 
 
 [1]
 Ms. Knapchuck lived with John Strong in Detroit
 
 
 [2]
 Miranda v. Arizona, 384 U.S. 436 (1966)
 
 
 [3]
 Furthermore it is not clear that the prior convictions deal with conduct "substantially similar" or "reasonably near in time to" the federal firearms charge presently against William. William broke into the pizzeria in January 1990, and the gun transaction took place in June 1991. The prior convictions involved theft charges, but the present charges in federal court relate to firearms. In Blankenship, this court held that the district court erred when it admitted evidence of the defendant's earlier theft convictions at his trial for illegal dealings in firearms to rebut the defendant's claim that he was entrapped. The court held that the evidence had little probative value as to the issue of predisposition. 775 F.2d at 740