**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mitchell Ray LUCAS,**
**Defendant–Appellant.**

**Nos. 88–2239 to 88–2241.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1989.

Decided Nov. 13, 1989.

Donald A. Davis, Asst. U.S. Atty. (argued), Grand Rapids, Mich., for plaintiff-appellee.

Paul L. Mitchell (argued), Grand Rapids, Mich., for defendant-appellant.

Before KEITH, MILBURN and NORRIS, Circuit Judges.

MILBURN, Circuit Judge.

In this sentencing guidelines case, defendant-appellant Mitchell Ray Lucas appeals the prison sentence the district court imposed after he pleaded guilty to three counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d). Lucas argues that the district court erred in finding that he had not accepted responsibility for his actions, and in adding two points to his offense level sentencing score based upon the psychological injuries suffered by the victim bank tellers. For the reasons that follow, we affirm.

## I.

During the years of 1987 and 1988, several banks in the Grand Rapids, Michigan, area were robbed. On May 12, 1988, the grand jury in the Western District of Michigan returned three indictments against defendant Lucas, charging him in connection with three armed robberies of banks. On September 16, 1988, Lucas pleaded guilty to all three robberies or one count in each of the three indictments.

The first bank robbery occurred on December 3, 1987, when Lucas robbed the Metro Banc in Walker, Michigan, and escaped with $3,165.00. The second robbery occurred on December 29, 1987, at another Metro Banc in Walker, in which Lucas escaped with $3,413.50. The third robbery occurred on February 20, 1988, at a Primebanc in Walker, in which Lucas escaped with $17,619.00. In this last robbery, the bank's surveillance cameras photographed Lucas in the bank and departing in a 1985 white Chevrolet Cavalier.

In each of the robberies, Lucas entered the bank concealing a BB pistol in a brown paper lunch bag. He had the bank tellers place money into the bag, and then he herded all the tellers into the bank vault or break room, where he ordered them to disrobe completely. After they stripped, he kicked or carried their clothes into another area of the bank and fled. It is undisputed that Lucas forced the tellers to disrobe at gunpoint and then took their clothes away in an effort to gain a few minutes for his escape. In two of the robberies, all of the tellers were females. In one robbery, one of the tellers was a male. In addition, in one robbery, a bank customer was herded along with the tellers and forced to disrobe completely at gunpoint.

In April 1988, the Kent County Sheriff's Department learned through a tip that Lucas might be connected to the robberies. FBI agents subsequently discovered that Lucas fit the physical description of the robber and that he drove a 1985 white Chevrolet Cavalier. FBI agents also determined that Lucas had not worked at his regular place of employment on the days on which bank robberies had occurred. On April 8, 1988, FBI agents arrested Lucas at his job. On that same date, a search of his residence turned up a BB pistol, a ski mask, and a 1985 white Chevrolet Cavalier.

On November 18, 1988, the district court conducted a sentencing hearing in which it reviewed a presentence report prepared by the United States Probation Office, along with Lucas' objections to the report. In applying the sentencing guidelines, Lucas, the prosecution, and the Probation Office agreed that Lucas had a basic offense level score of 26. Lucas argued that he was entitled to a reduction of two points because he had accepted responsibility for his actions. He also argued that contrary to the Probation Office's recommendation, the

psychological injuries suffered by the tellers during the robberies did not justify increasing his score. Lucas insisted that the guidelines contemplate an upward departure only in cases of "extreme psychological injury," *see* United States Sentencing Guidelines Manual ("Manual") § 5K2.3, and there was no indication in this case that the psychological injuries the tellers suffered, if any, were extreme enough to justify an upward departure.

The prosecution argued that an upward departure was appropriate because Lucas had forced the tellers to endure a terrifying and dehumanizing intrusion. Amy Jenkins, a teller at the Primebanc that Lucas robbed in February 1988, and a student at Grand Rapids Baptist College, testified that she felt "very dirty," "guilty," and "gross" after Lucas forced her to strip at gunpoint and remain, naked, in the vault with her coworkers. She further testified that she had changed jobs and was still undergoing counseling.

The district court found that Lucas had not accepted responsibility for his actions, and denied his request for a two-point reduction. The district court pointed out "that [because] the defendant enters a plea of guilty does not necessarily mean he has accepted responsibility." The district court noted that Lucas had not voluntarily terminated his criminal conduct, had not volunteered to pay restitution, did not voluntarily surrender to law enforcement officials, did not voluntarily assist law enforcement officials in recovering the fruits and instrumentalities of the offenses, and he never even apologized to the tellers whom he had terrorized, though at least five months had intervened between his arrest and sentencing. The district court concluded that Lucas had failed "to clearly demonstrate—demonstrate a recognition and affirmative acceptance of personal responsibility for his criminal conduct."

The district court next found that the nature of the tellers' psychological injuries was sufficient to justify an upward departure from the sentencing guidelines, as explained in section 5K2.3 of the Manual.[1] The district court also pointed out that it is permitted to depart from the guidelines where it finds

> that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (Supp.1989); *see also* Manual § 5K2.0. The district court found that the guidelines did not adequately address the facts and circumstances of this case, as they provided for upward departures where robbery victims suffered physical injury but did not address psychological injury. *See* Manual § 2B3.1(b)(3).

The guidelines also direct that a defendant's offense level be increased by two points "if any person was physically restrained to facilitate commission of the offense or to facilitate escape...." Manual § 2B3.1(b)(4)(B). The district court hypothesized that when Lucas herded the tellers at gunpoint and forced them to disrobe and remain in the vault or break room, arguably he "restrained" them to facilitate his escape, thereby triggering the guidelines' directive to raise his offense level by two points.

Under the guidelines, a defendant with Lucas' minimal criminal history and an of-

---

**1.** Section 5K2.3 provides:

Extreme Psychological Injury (Policy Statement)

If a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense, the court may increase the sentence above the authorized guideline range. The extent of the increase ordinarily should depend on the severity of the psychological injury and the extent to which the injury was intended or knowingly risked.

Normally, psychological injury would be sufficiently severe to warrant application of this adjustment only when there is a substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim, when the impairment is likely to be of an extended or continuous duration, and when the impairment manifests itself by physical or psychological symptoms or by changes in behavior patterns. The court should consider the extent to which such harm was likely, given the nature of the defendant's conduct.

fense level of 26 would receive a sentence of between 63 and 78 months, while a defendant with an offense level of 28 would receive a sentence of 78 to 97 months. After overruling Lucas' objections to the Probation Office's report and increasing his offense level score to 28, the district court sentenced him to the maximum of 97 months in prison. In addition, Lucas was ordered to make restitution to all of the banks he pleaded guilty to robbing.

The principal issue upon appeal is whether the district court erred in failing to reduce Lucas' offense level score by two points and, instead, departing from the guidelines and increasing his score by two points.

## II.

In reviewing a defendant's appeal of an application of the guidelines, pursuant to 18 U.S.C. § 3742(a),

> [t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e) (Supp.1989).

Lucas first argues that the district court improperly applied the guidelines because it incorrectly found that he had failed to accept responsibility for his crimes. "Whether or not a defendant has accepted responsibility is a factual question, depending largely upon credibility assessments. With respect to such assessments, we defer to the conclusion of the sentencing judge ... [and] affirm the sentencing judge's findings unless they are 'without foundation.'" *United States v. Franco–Torres,* 869 F.2d 797, 799 (5th Cir.1989) (quoting *United States v. Thomas,* 870 F.2d 174, 177 (5th Cir.1989)).

Lucas also challenges the district court's departure from the guidelines. As this court noted recently in *United States v. Rodriguez,* 882 F.2d 1059 (6th Cir.1989), review of such a departure follows a three-step process:

1) A plenary review of whether the circumstances of the case justify departure;

2) Whether those circumstances exist, bearing in mind the district court's findings of fact may be set aside only for clear error; and

3) Whether, considering the circumstances of the case, the direction and degree of departure are reasonable. *Rodriguez,* 882 F.2d at 1067 (quoting *United States v. Diaz–Villafane,* 874 F.2d 43, 49–50 (1st Cir.1989)).

## III.

### A.

■ Lucas insists that he has clearly demonstrated that he has accepted responsibility for his crimes. The district court found otherwise, and we believe that determination is not clearly erroneous. As noted above, the question of whether a defendant has accepted responsibility is a factual one for the sentencing court. *Franco–Torres,* 869 F.2d at 799. The guidelines manual supplies a list of factors to guide that finding. Manual § 3E1.1. The record in this case clearly shows that the district court reviewed the criteria and had a formidable foundation to support its decision that Lucas had not demonstrated remorse and accepted responsibility sufficient to earn a two-point reduction in his offense level.

### B.

■ Lucas maintains the sentence he received is "unreasonable" because the district court was not justified in its upward departure from the guidelines. Lucas asserts, as he argued below, that the evidence does not justify the finding that the victims suffered psychological injury so extreme as to justify raising his offense level by two points.

Following the three-step process outlined in *Rodriguez,* we find that the district court's departure in this case was permissible. First, we agree with the district court that the guidelines direct an upward departure in this case, based upon the extent of the tellers' (and the one bank customer's) psychological injuries. *See* Manual

§ 5K2.3. Amy Jenkins' testimony, as well as common sense and experience, refute Lucas' attempt to minimize the terror and humiliation he forced the victims to endure.

### C.

■ We also agree with the district court that its decision to increase Lucas' offense level score was further justified by the aggravating circumstances in this case. *See* 18 U.S.C. § 3553(b) (Supp.1989). The fact that the guidelines are silent with respect to robbery victims' psychological injuries, but they expressly direct a district court to increase a defendant's score where robbery victims suffer physical injuries, bolsters the conclusion that the Sentencing Commission did not adequately consider the kind and degree of aggravating circumstances present in this case.

The next step of the *Rodriquez* analysis poses the question of whether the aggravating circumstances cited by the district court are actually present in this case. We note that not only are they present, they are undisputed.

Third, we must consider whether, in light of the aggravating circumstances in this case, the district court's upward departure was "reasonable." Mindful of the deference we must pay to a district court's sentencing decision, as well as the facts and arguments discussed above, we conclude that the district court's decision to increase Lucas' score by two points was reasonable.

In affirming the judgment of the district court, it is not necessary for us to reach the question of whether Lucas' conduct amounted to the "physical restraint" that would justify an upward departure. *See* Manual § 2B3.1(b)(4)(B). The district court did not find "physical restraint," but only noted that Lucas' conduct "arguably" fit the label.

### IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.