NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0490n.06

Case No. 20-6116

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Oct 27, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| JEFFERY LEE DAVIS, | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

Before: GILMAN, THAPAR, and NALBANDIAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge**. Jeffery Lee Davis appeals his conviction for possessing with intent to distribute more than five grams of methamphetamine (meth), in violation of 21 U.S.C. § 841(a)(1). Davis also appeals his 210-month term of imprisonment. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Agents with the Gibson County Drug Task Force served an arrest warrant on Davis at his residence in Trenton, Tennessee on July 6, 2017. In the process of serving the warrant, the agents observed Davis sitting at his desk, using a digital scale to weigh a small amount of what they perceived (and later confirmed) to be meth. A larger bag that contained 12 grams of meth sat on Davis's desk, and another bag containing 14 grams of meth was discovered in his pocket. The district court ultimately found Davis to be in possession of more than 35 grams of the drug, 27.65 grams of which were discovered during the July 6, 2017 arrest.

A federal grand jury returned a one-count superseding indictment, charging Davis with possession with intent to distribute more than five grams of meth. Davis proceeded to trial and, in January 2020, a jury returned a verdict of guilty. The district court subsequently sentenced Davis to 210 months of imprisonment, which was within the advisory sentencing range set forth in the United States Sentencing Guidelines (U.S.S.G.). This timely appeal followed.

## II. ANALYSIS

Davis raises two issues on appeal. First, he argues that the evidence at trial was insufficient to prove beyond a reasonable doubt that he intended to engage in drug distribution, an element necessary for a conviction under 21 U.S.C. § 841(a)(1). Second, Davis contends that the district court imposed an unreasonable sentence by (1) attributing to Davis an additional six grams of meth, which increased his total base offense level under U.S.S.G. § 2D1.1(c)(6); (2) applying the premises enhancement pursuant to U.S.S.G. § 2D1.1(b)(12); and (3) applying the obstruction-of-justice enhancement pursuant to U.S.S.G. § 3C1.1.

## A.    Sufficiency of the evidence

Davis's first challenge is to the sufficiency of the evidence supporting his conviction. At trial, Davis moved for a judgment of acquittal twice: once at the close of the government's case-in-chief and again at the close of all the evidence. The district court denied both motions.

Our review of a district court's refusal to grant a motion for judgment of acquittal is de novo. *United States v. Howard*, 947 F.3d 936, 947 (6th Cir. 2020). A defendant challenging the sufficiency of the evidence "must surmount a demanding legal standard." *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). We inquire whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)

(emphasis in original) (instructing that we view the evidence in the light most favorable to the prosecution). In doing so, we "draw all reasonable inferences in support of the jury's verdict and will reverse a judgment for insufficient evidence only if the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Stewart*, 729 F.3d 517, 526 (6th Cir. 2013) (internal quotation marks omitted) (quoting *United States v. Wettstain*, 618 F.3d 577, 583 (6th Cir. 2010)). But we "do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

To establish a violation of 21 U.S.C. § 841(a)(1), the government must prove beyond a reasonable doubt "the following elements: '(1) knowing (2) possession of a controlled substance (3) with intent to distribute.'" *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir. 1986)). The third element—intent to distribute—requires a showing of both general and specific intent. *United States v. Goodman*, 243 F. App'x 137, 139 (6th Cir. 2007). Such intent can be inferred from a defendant's "possession of a large quantity of a controlled substance." *Id.* At issue in the present case is whether any rational trier of fact could have found beyond a reasonable doubt that Davis intended to engage in drug distribution.

Davis argues that no rational trier of fact could find the intent required to establish a violation of § 841(a)(1). But the government offered evidence that included the testimony of Agent Chad Jackson, the agent who served Davis's arrest warrant in July 2017; the opinion testimony of Agent Wes Mayes regarding what amount of meth would indicate an intent to distribute; and "other-acts" evidence establishing Davis's intent to distribute meth, which was offered into the record under Rule 404(b) of the Federal Rules of Evidence.

We first review the material portions of Agent Jackson's testimony. Agent Jackson is a law-enforcement officer employed by the Gibson County Sheriff's Department and assigned to the Drug Task Force. On July 6, 2017, he was one of the officers who served the arrest warrant on Davis. While serving the warrant, Agent Jackson observed Davis using a digital scale to measure a small amount of meth for placement into a sandwich bag. The smaller amount of meth appeared to have been taken from a larger bag, which held about 12 grams of meth and was sitting open on Davis's desk. An additional bag containing about 14 grams of meth was found in Davis's pocket. Agent Jackson also observed that Davis had installed a surveillance camera on his property. After his arrest, Davis made a statement to the officers, including Agent Jackson, that the drugs belonged to Davis and that the arrest was his "third strike." Finally, after the proper foundation was laid, Agent Jackson testified that, in his experience as a law-enforcement officer, a person found in possession of 27 grams of meth who was weighing it on a digital scale and who had installed a surveillance camera at his property was exhibiting the common characteristics of drug-dealing activity.

We next assess the material portions of Agent Mayes's opinion testimony, which the government offered at trial for the limited purpose of establishing what quantity of meth indicates an intent to engage in drug distribution. Agent Mayes opined that possessing 27 grams of meth indicates an intent to distribute. He also testified that the largest amount of meth that he had witnessed a user purchasing in a single transaction for personal use was two to three grams. Finally, Agent Mayes testified that the absence of other common drug-dealing items, such as cash or cutting agents, would not change his opinion that possessing 27 grams of meth indicates an intent to distribute.

We also consider the "other-acts" evidence entered into the record pursuant to Rule 404(b) of the Federal Rules of Evidence. One such act included a transaction in which Davis sold about a third of a gram of meth to an undercover informant. Agent Jackson oversaw the transaction, which occurred at Davis's residence on February 28, 2017. The government also entered into the record a May 2012 conviction of Davis in Gibson County for acquiring the ingredients or equipment necessary to manufacture meth.

Davis, on the other hand, testified at trial that the 27 grams of meth he possessed on July 6, 2017, was only for his personal use. He contends that the district court should have given more weight to that testimony because it was consistent with his other statements that he would consume about one gram of meth per day and that he had a pipe under his couch that the law-enforcement officers failed to find. In essence, Davis disagrees with the district court's weighing of the evidence and determinations of credibility, but his disagreement cannot serve as grounds for reversal. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) (explaining that, even when applying de novo review, this court does not "consider the credibility of witnesses or substitute [its] judgment for that of the jury"). Viewed in the light most favorable to the government, we conclude that the record consisted of substantial and competent evidence—the testimony of Agents Jackson and Mayes as well as the Rule 404(b) evidence—sufficient for a rational trier of fact to conclude that Davis intended to engage in drug distribution.

Davis's citation to *United States v. Hampton*, 769 F. App'x 308 (6th Cir. 2019), does not persuade us otherwise. In *Hampton*, this court observed that a heavy user of meth "might use five or six grams [of meth] in a day." *Id*. at 309. The court nevertheless affirmed the district court's decision to deny a motion for judgment of acquittal because the evidence established that the defendant

possessed at least 50 grams of meth, had plastic baggies and a scale, and was in proximity to a firearm. Our case has equivalent indicia of drug distribution, including the surveillance camera and the "other-acts" evidence.

## B. Reasonableness of the sentence

Davis next contends that the district court imposed an unreasonable sentence by improperly (1) attributing six additional grams of meth to him, (2) applying the premises enhancement, and (3) applying the obstruction-of-justice enhancement. We review challenges to a sentence's reasonableness under the abuse-of-discretion standard. *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). "Sentences must be both procedurally and substantively reasonable." *Id.*

### 1. *Procedural reasonableness of the sentence*

We first assess "whether the district court committed 'significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id*. (alteration in original) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). The sentencing judge "should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). For the reasons set forth below, we conclude that Davis's sentence was procedurally reasonable.

#### a. *The district court did not err in attributing six additional grams of meth to Davis*

Davis first argues that the district court improperly calculated his base offense level under U.S.S.G. § 2D1.1(c)(6) by attributing six additional grams of meth to him. A district court's "calculation of the quantity of controlled substances for which a defendant is to be held

accountable" is a finding of fact that we review under the clear-error standard. *United States v. Berry*, 90 F.3d 148, 152 (6th Cir. 1996). Further, a district court "may hold a defendant responsible for an amount of drugs only if it finds that it is more likely than not that the defendant actually was responsible for at least that amount." *Id.* "An approximation by a court is not clearly erroneous if it is supported by . . . 'some minimum indicium of reliability beyond mere allegation.'" *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995) (quoting *United States v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989)). A district court may also rely on testimonial evidence to make its finding of drug quantity, and we will defer to the court's credibility determinations unless they are "without foundation." *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998) (quoting *United States v. Lucas*, 889 F.2d 697, 700 (6th Cir. 1989)).

In the present case, the district court found that Davis was responsible for an additional six grams of meth based on the credible testimony of Dedrick Mays, a witness at Davis's sentencing hearing who testified that he had purchased meth from Davis on more than 9 or 10 occasions. Davis argues that Mays's testimony was unreliable, pointing to Mays's history of mental illness; Mays's inability to recall details of other alleged meth transactions that he witnessed at Davis's residence; and Mays's current incarceration status, which Davis contends gave Mays the motive to testify on behalf of the government.

Although Davis disagrees with the district court's credibility determination, his disagreement does not amount to a showing that the court's assessment of Mays is without foundation. Moreover, the court noted that Mays's testimony was used only to approximate the amount of meth that Mays personally purchased from Davis. The court did not rely on Mays's testimony about Davis's transactions with other people in quantifying the amount of meth

attributable to Davis for sentencing purposes. Because the court's credibility assessment of Mays is not without foundation, we conclude that the court did not err in attributing the six additional grams of meth to Davis based on Mays's testimony.

Davis next argues that even if we defer to the district court's determination that Mays was a credible witness, the government's evidence failed to show by a preponderance of the evidence that the additional six grams of meth attributed to Davis was actual meth, a purer form of the drug otherwise referred to as "ice." He contends that Mays's testimony alone did not satisfy the evidentiary standard. Contrary to Davis's argument, however, the district court relied on more than just Mays's testimony. The court also considered prior instances where Davis was found in possession of actual meth—specifically, the actual meth that Davis possessed on July 6, 2017. This finding is of consequence because, under the Guidelines, the offense level for a quantity of actual meth is higher than the offense level for an equivalent amount of a less-pure mixture of the drug. *See* U.S.S.G. § 2D1.1(c) (setting forth the base offense levels associated with different amounts and types of controlled substances). On this record, we conclude that the court did not err in finding that Mays, more likely than not, purchased actual meth from Davis.

### b.    *The district court did not err in applying the premises enhancement*

Davis further argues that the district court imposed a procedurally unreasonable sentence by applying the premises enhancement set forth in U.S.S.G. § 2D1.1(b)(12). In reviewing this sentencing enhancement, we "accord due deference to the district court's application of the guidelines to the facts." *United States v. Uminn*, 820 F. App'x 353, 356 (6th Cir. 2020). Indeed, "some deference applies even if the issue touches on some aspect of law." *Id.*

The premises enhancement set forth in § 2D1.1(b)(12) of the Guidelines "applies to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance," *United States v Johnson*, 737 F.3d 444, 447 (6th Cir. 2013), elements that the government must establish by "a preponderance of the evidence." *United States v. Hubbard*, 843 F. App'x 667, 674 (6th Cir. 2019). The third element does not require the defendant's premises to be maintained for the "sole purpose" of distributing drugs. *Johnson*, 737 F.3d at 447 (quoting § 2D1.1 cmt. n.17). Rather, the premises enhancement is applicable so long as "*one of* [the defendant's] primary or principal uses for the premises" is the manufacturing or distribution of drugs. *Id.* (emphasis in original) (quoting § 2D1.1 cmt. n.17). The drug-distribution or manufacturing activity also need not occur throughout the entire residence. If the activity occurs in just a "room" or an "enclosure," that is sufficient to trigger application of the enhancement. *Id*. (quoting § 2D1.1 cmt. n.17). We consider the "frequency of lawful to unlawful use" at the premises and ultimately assess whether the residence "played a significant part in distributing drugs." *United States v. Bell*, 766 F.3d 634, 637 (6th Cir. 2014) (internal quotation marks omitted) (quoting *Johnson*, 737 F.3d at 449) (explaining that the key inquiry is whether the defendant's residence played a significant role in the drug distribution).

We start by looking to "facts that the district court relied on in applying the enhancement." *Uminn*, 820 F. App'x at 357. The court determined that Mays's testimony at the sentencing hearing was credible. It thus relied on that testimony. Mays testified that he bought meth from Davis at Davis's residence on more than 9 or 10 occasions, and that he recalled occasionally seeing other people purchase meth from Davis at the residence. The court also considered the following relevant conduct—as set forth in Davis's Presentence Report—to determine whether the premises

enhancement was applicable: (1) a November 2016 alleged sale of meth that occurred by a car parked outside of Davis's residence; (2) the controlled purchase of meth that occurred at Davis's residence on February 28, 2017; and (3) the July 6, 2017 arrest of Davis, in which Davis was found in possession of a quantity of meth indicative of an intent to distribute.

Davis contests the district court's consideration of the alleged drug sale that occurred by a car parked outside of his residence. But even if we were to omit that alleged sale, we conclude that the other evidence upon which the court relied in applying the enhancement —including Mays's testimony that he purchased meth from Davis at Davis's residence on more than 9 or 10 occasions, the undercover purchase of meth at Davis's residence in February 2017, and the large amount of meth that Davis possessed at his residence in July 2017—supports a finding by a preponderance of the evidence that one of the primary uses of Davis's residence was to distribute meth.

Relying on this court's decision in *Uminn*, Davis also argues that the district should not have applied the enhancement because Davis testified that he used his residence only for his personal drug use. *See Uminn*, 820 F. App'x at 357 (explaining that the premises enhancement does not apply when a defendant stores meth at his residence for only personal consumption). But consistent with *Uminn*, "the district court was not bound by [Davis's] self-reported personal use statistics." *Id*. Other evidence within the record in the present case, as summarized above, supports the court's finding that Davis also frequently used his home to distribute meth. We thus conclude that the court did not err in applying the premises enhancement, and this court's reasoning in *Uminn* supports that conclusion.

### c. The district court did not err in applying the obstruction-of-justice enhancement

Finally, Davis argues that the district court erred when it applied the obstruction-of-justice enhancement pursuant to U.S.S.G. § 3C1.1. A district court may apply this enhancement if it finds by a preponderance of the evidence that the defendant "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." § 3C1.1.

For us to sustain the enhancement's application on appeal, the district court must satisfy two requirements: "first, it must identify those particular portions of the defendant's testimony that it considers to be perjurious, and second, it must either make specific findings for each element of perjury or at least make a finding that encompasses all of the factual predicates for a finding of perjury." *United States v. Roberts*, 919 F.3d 980, 990 (6th Cir. 2019) (quoting *United States v. Sassannelli*, 118 F.3d 495, 501 (6th Cir. 1997)). A finding of perjury for the purposes of the obstruction-of-justice enhancement is sufficient if the court determines that "the defendant was untruthful at trial with respect to material matters in this case" and that the "untruthful testimony on material matters was designed to substantially affect the outcome of the case." *United States v. Chance*, 306 F.3d 356, 390 (6th Cir. 2002) (emphasis and internal quotation marks omitted) (quoting *United States v. Dunnigan*, 507 U.S. 87, 95 (1993)).

Davis argues that the district court's application of the enhancement based on the testimony of Mays at trial was reversible error because Mays testified only at Davis's sentencing hearing. He thus contends that because Mays did not testify at trial, Davis could not have purposefully attempted to mislead the jury. Davis also asserts that because he never denied possessing meth (as

opposed to selling meth), there is no basis to find that he willfully intended to provide false testimony.

First, Davis's argument that the district court improperly relied on Mays's testimony to assess the truthfulness of Davis's trial testimony is unsupported. He does not point to any caselaw that requires district courts to consider only trial testimony in determining whether the defendant was attempting to obstruct justice. Second, the main issue at trial was whether Davis intended to distribute the meth; it was not whether he simply possessed the drug. Davis's argument that he did not willfully give false testimony at trial because he never denied that he possessed meth is thus without merit.

We now turn to assess (1) whether the district court sufficiently identified the portions of Davis's testimony that it considered perjurious, and (2) whether it made findings that encompass the factual predicates of perjury. During the sentencing hearing, the court adequately identified which portions of Davis's trial testimony it considered to be false: (1) Davis's statements at trial denying that he had ever sold or distributed meth; and (2) Davis's attempt to deflect responsibility by claiming that he was only a middleman in alleged drug transactions, and his placing blame on other individuals. In light of this record, we conclude that the court sufficiently identified the portions of Davis's testimony that it considered to be untruthful.

Second, the district court's findings sufficiently encompass the factual predicates of perjury. The court found that Davis's attempt to minimize his role in the alleged drug transactions by claiming that he acted only as a middleman was untruthful. Based on Mays's credible testimony that he had purchased meth from Davis on multiple occasions, the court also found that Davis

untruthfully testified when he denied ever distributing or selling meth. The court characterized Davis's testimony in these instances as attempts to obstruct justice.

We thus conclude that the district court's findings adequately encompass the factual predicates of perjury. Davis's concern that his sentence was enhanced because he chose to testify and was nonetheless found guilty is therefore "dispelled." *See Dunnigan*, 507 U.S. at 96–97 (holding that the risk of a district court improperly applying the obstruction-of-justice enhancement based on an incorrect finding of perjury is mitigated by requiring the court to make findings that establish the elements of perjury). In sum, the court did not err in applying the obstruction-of-justice enhancement.

### 2.      *Substantive reasonableness of the sentence*

Having concluded that Davis's sentence was procedurally reasonable, "we next evaluate whether it was substantively reasonable." *United States v. Kamper*, 748 F.3d 728, 739 (6th Cir. 2014). A sentence is "substantively *unreasonable* 'where the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *United States v. Pirosko*, 787 F.3d 358, 372 (6th Cir. 2015) (alterations and emphasis in original) (quoting *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008)). A presumption of reasonableness applies to sentences that are within or below the Guidelines range. *Kamper*, 748 F.3d at 739–40.

The district court calculated Davis's total base offense level at 32 and his criminal history category at level V, which resulted in an advisory Guidelines sentencing range of 188 to 235 months of imprisonment. Based on that range, the court sentenced Davis to 210 months. Because this sentence falls within the Guidelines range, the presumption of substantive reasonableness attaches. Davis does

not contend that the court arbitrarily sentenced him. Nor does he make a showing that the court failed to consider the pertinent § 3553(a) factors or considered impermissible factors in fashioning Davis's sentence. Rather, the record indicates that the court adequately considered and discussed the relevant § 3553(a) factors and concluded that those factors supported a 210-month term of imprisonment. Davis does not surmount the presumption of reasonableness attached to his sentence. We therefore conclude that the court did not abuse its discretion when it imposed the 210-month sentence.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.