NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0517n.06

No. 21-5853

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Dec 14, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| FAVIAN BUSBY and MICHAEL EDGINGTON, on their own behalf and on behalf of those similarly situated, )<br><br>Petitioners-Appellees, )<br><br>v. )<br><br>FLOYD BONNER, JR., *in his official capacity as the Shelby County Sheriff*; SHELBY COUNTY, SHERIFF'S OFFICE, )<br><br>Respondents-Appellants. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |

**BEFORE: BATCHELDER, WHITE, and BUSH, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Respondents-Appellants, Sheriff Floyd Bonner, Jr. and the Shelby County, Tennessee, Sheriff's Office, appeal the denial of their motion to terminate a consent decree that imposed various obligations on the Shelby County Jail ("the Jail") regarding its response to the COVID-19 pandemic. Because, on this record, the district court did not clearly err in finding that Respondents failed to show that the Jail satisfied the decree's requirements for termination, we **AFFIRM**.

**I.**

**A.**

Petitioner-detainees initiated this action by petitioning for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and filing a class-action complaint for declaratory and injunctive relief. Named Petitioners Favian Busby and Michael Edgington, seeking to represent a class of "all

current and future medically vulnerable . . . pretrial detainees held at the Jail who, according to the [CDC], are at high risk of severe infection or death from COVID-19," R.1, PID 2, asked the district court to order their immediate release from the Jail and for other relief. They asserted claims under the Fourteenth Amendment for unconstitutional punishment and unconstitutional confinement, and under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act for disability discrimination. Concurrently, they moved for a temporary restraining order directing, among other things, their immediate release.

The district court certified a class and subclass of medically vulnerable and disabled individuals held pretrial at the Jail who are at an increased risk of serious injury or death from COVID-19. But it denied Petitioners' motion for temporary restraining order, finding that they had failed to show a likelihood of success on the merits.[1]

After extensive discovery and three days of mediation, the parties settled the case and entered into the consent decree at issue in this appeal. The consent decree requires the Jail to comply with various inspection and reporting requirements; maintain safe ventilation and air quality; implement various testing, isolation, and quarantine protocols; provide hygiene, personal protective equipment, and vaccines; and implement social-distancing measures.

The consent decree requires the Jail to provide a monthly report to a court-appointed independent inspector until the consent decree terminates. That report must provide information such as the total population of the Jail, the number of COVID-19 tests conducted on staff and detainees, the number of staff on leave due to COVID-19 symptoms, and the number of detainees who have died from, exhibited symptoms of, or tested positive for COVID-19. The independent

---

[1] The district court treated the motion for temporary restraining order as a motion for preliminary injunction on the detainees' request and because the court conducted a hearing on the motion.

inspector is directed to conduct regular, unannounced inspections until the consent decree is terminated or the independent inspector recommends or determines that no further inspections are necessary. After each inspection, the independent inspector is to produce a written report containing findings regarding COVID-19-related issues at the Jail. If the report contains any recommendations, the Jail must, within fourteen days of receiving the report, either implement the recommendations or explain why, despite its best efforts, it cannot or will not adopt the recommendations.

The consent decree also requires the Jail to offer a test to all detainees and staff who exhibit COVID-19 symptoms. If a detainee or staff member tests positive, the Jail must perform contact tracing, and any detainee who tests positive must be isolated according to CDC guidelines. Finally, the Jail must provide personal protective equipment and cleaning agents to detainees and implement any social-distancing-related recommendations made by the independent inspector unless the Jail gives specific reasons for its inability or unwillingness to do so.

In addition to these substantive requirements, the consent decree includes provisions related to the enforcement and modification of the consent decree, as well as a confidentiality provision. Relevant to this appeal, the decree contains the following termination provision:

**XI. Termination**

28. This Decree will terminate upon the earliest of either (a) a declaration by the CDC and the Tennessee Department of Health that the COVID-19 pandemic is over and/or has ended, or (b) an FDA-approved COVID-19 vaccine is offered to and administered according to FDA guidelines to all detainees housed at the Jail for a period of more than fourteen (14) days and who accept a vaccination, along with educational materials about the vaccine and non-punitive incentives to take the vaccine. Upon termination of this Decree pursuant to this Paragraph, the parties shall inform the Court and the Court shall enter a final judgment of dismissal.

29. If this Decree has not otherwise terminated one year after the Effective Date, the parties may, at any time, jointly move the Court to terminate the

Decree. If the parties do not agree that the Decree should terminate one year after the Effective Date, [Respondents] shall have the right, at any time, to petition the Court to terminate the Decree on the grounds that the Decree is no longer necessary.

R.161-2, PID 3210.

Finally, the consent decree contains the following paragraph titled "18 U.S.C. § 3626(a)(1)(A)":

> For purposes of jurisdiction and enforcement of this Decree only, the parties jointly request that the Court find that this Decree satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct any violation of a federal right, and is the least intrusive means necessary to correct any violation of the federal rights of the Plaintiffs. Notwithstanding, nothing in this Decree shall be construed as an admission by any party of any wrongful conduct whatsoever against any person or party.

R.161-2, PID 3211.

## B.

The district court approved and entered the consent decree on April 12, 2021. Around two months later, Respondents moved to terminate it. Respondents argued that the Jail had satisfied the consent decree's requirements for termination, having offered and administered a vaccine to all eligible detainees and provided educational materials and non-punitive incentives to take the vaccine.

After conducting a two-day evidentiary hearing on August 6, and 9, 2021, the district court denied Respondents' motion to terminate. The district court determined that Respondents failed to meet their burden of demonstrating the Jail's compliance with the requirement that it offer and, if accepted, administer a COVID-19 vaccine to all detainees housed at the Jail for a period of more than fourteen days. It noted that Petitioners had presented evidence that no vaccines were administered during a three-week period in the summer of 2021. It was possible, the court found, that a detainee who qualified for and requested a vaccine could have been released during this

period before the detainee received a vaccine. The district court also observed that the Jail's "failure to track who has requested and received the vaccination, and present evidence of their compliance with Paragraph 28(b)'s vaccine administration requirement leaves the Court with little to go on." R.258, PID 5069. Accordingly, the court determined that it was "left with a meaningful dispute about whether [the Jail] ha[s] complied with the [vaccination] requirement." *Id.*

The district court also held that Respondents failed to meet their burden of demonstrating the Jail's compliance with the consent decree's educational-materials requirement. The district court credited Petitioners' challenges to the availability and efficacy of the educational materials, observing, among other things, that only 300 out of approximately 1900–2000 detainees had attended "pep rallies" at which vaccine information was provided. *Id.*, PID 5076. It also credited the testimony of a detainee-witness that vaccine information on kiosks was not always available to detainees, whether because they had not always had time outside their cells to access such kiosks, or because the kiosks were not working. Additionally, the court noted that printed materials provided by the Jail were "lengthy, dense, and in small print," and questioned whether they would be helpful "to a population whose average reading level is at a 6th grade level." *Id.*, PID 5080. "What the Court can discern from the Parties' evidence," the district court stated, "is that, while [the Jail] [is] making various attempts to educate the detainees about the vaccine, [its] efforts are not available to all detainees, and beyond this, are not effective." *Id.*, PID 5079.

Finally, with respect to the requirement that the Jail provide detainees with non-punitive incentives to take the vaccine, the district court determined that the detainees "have created disputes about whether incentives have been offered to every detainee who has been housed at the Jail for more than 14 days." *Id.*, PID 5082. Among other things, it recounted the testimony of a detainee-witness who testified that he had not seen any printed notices about a $20 incentive for

receiving the vaccine, and that he was not aware of anyone's receiving a certificate of appreciation that was supposedly given out as a reward. The district court also credited the testimony of another detainee-witness who testified that he was never informed that he would receive post-vaccine care—another purported incentive—and that even though he experienced side effects after receiving the vaccine, he never received any medical care.

Respondents timely appealed and sought a stay order or, in the alternative, to expedite the appeal. We denied the motion for stay and granted the unopposed alternative request to expedite briefing.

**II.**

We review a district court's interpretation of a consent decree de novo and its underlying findings of fact for clear error. *Evoqua Water Techs., LLC v. M.W. Watermark, LLC*, 940 F.3d 222, 228–29 (6th Cir. 2019). When reviewing "an interpretation of a consent decree by the district court that crafted the judgment," that is, by the same court that "oversaw and approved the original settlement agreement/consent decree," our review is "more accurately described as 'deferential de novo.'" *Shy v. Navistar Int'l Corp.*, 701 F.3d 523, 528 (6th Cir. 2012) (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 371–72 (6th Cir. 1998)). In other words, we accord "substantial deference" to the district court's interpretation of its own consent decree on appeal. *Huguley v. Gen. Motors Corp.*, 67 F.3d 129, 132 (6th Cir. 1995). "Such deference is required because '[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it.'" *Id.* (quoting *Huguley v. Gen. Motors Corp. (Perry I)*, 999 F.2d 142, 146 (6th Cir. 1993)).

**A.**

**1.**

Respondents argue that under the PLRA, prospective relief can "extend no further than necessary to correct the violation of the Federal right," 18 U.S.C. § 3626(a)(1)(A), and that the district court refused to heed that requirement in ruling on its motion to terminate, instead "appl[ying] a broad interpretation of Paragraph 28 that violates the PLRA and contradicts the parties' intentions as reflected within the consent decree." Appellant Br. at 10, 25. More specifically, Respondents contend that all detainees housed at the Jail "are being offered access to COVID-19 vaccines," *id.* at 20, and that Petitioners therefore cannot make the showing of federal rights violations necessary to justify the continued operation of the consent decree. However, the parties stipulated in Paragraph 31 of the consent decree that the decree complies with the PLRA for enforcement purposes, and Respondents cannot *now* challenge that fact. Instead, they must show that the Jail met the requirements of the termination clause.

Although they acknowledge that the district court's findings are reviewed for clear error, Respondents argue that "[b]ecause it is not only the District Court's fact-finding that is at issue, but its improper *interpretation* of the Decree" this court should "undertake a de novo review of the District Court's order." Reply Br. at 8. Petitioners argue in response that this court's task is both narrow and straightforward: to determine whether the district court's factual findings regarding the Jail's compliance with Paragraph 28 are clearly erroneous.

Because Respondents' challenge to the district court's interpretation of the consent decree raises a legal question about a decree that the district court itself oversaw and approved, we apply a deferential de novo standard of review. *See Shy*, 701 F.3d at 528. And, because Respondents' challenge to the district court's determination that they failed to satisfy the three requirements for

termination in Paragraph 28 is a quarrel with the district court's factual findings, we review that challenge for clear error. *See Evoqua Water Techs., LLC*, 940 F.3d at 228–29.

**2.**

We first address the district court's interpretation of the consent decree. In its order denying Respondents' motion to terminate, the district court noted that Paragraph 28, and the consent decree overall, embodied an understanding that, "per the Parties' agreement, the Decree would terminate when the detainees were no longer in danger, either because the pandemic was over or because an effective vaccination program had resulted in meaningful acceptance of the vaccine." R.258, PID 5066. The district court purported to base this conclusion on the text of the consent decree itself, noting that "Paragraph 28 does not state that once a vaccine is offered, the Consent Decree is terminated. Rather, it states that a vaccine must be offered in tandem with effective communication and reinforcement of the benefits of the vaccine." *Id.* The district court further noted that while the problem of vaccine hesitancy was not the fault of the Jail, the "requirements of Paragraph 28 implicitly reflect an understanding of this reality." *Id.* The district court then evaluated the parties' proffered evidence regarding the Jail's provision of vaccines, educational materials, and non-punitive incentives to take the vaccine.

Although we accord substantial deference to the district court's interpretation of the consent decree, deferential de novo review is not without its limits. We do not "simply defer to the district court's interpretation." *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 988 (6th Cir. 2006) (quoting *Engler*, 146 F.3d at 371). Rather, we "utilize the lower court's understanding as 'an additional tool for contract interpretation.'" *Id.* (quoting *Engler* 146 F.3d at 371).

Our task in interpreting a consent decree is to "ascertain the intent of the parties at the time of the settlement." *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 478 (6th Cir. 2007) (internal quotation marks omitted). We confine ourselves to the four corners of the consent decree and do not focus on "what might satisfy the purposes of one of the parties to it." *Evoqua Water Techs., LLC*, 940 F.3d at 229 (quoting *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971)). And we apply the law of the state in which the consent decree was entered: here, Tennessee. *See John B. v. Emkes*, 710 F.3d 394, 407 (6th Cir. 2013).

Under Tennessee law, we determine the intent of the parties "based upon the usual, natural, and ordinary meaning of the contractual language." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 392 (6th Cir. 2007) (quoting *Teter v. Republic Parking Sys.*, 181 S.W.3d 330, 342 (Tenn. 2005)). Courts may not act as "a fallback mechanism for parties to use to 'make a new contract' if their written contract purportedly fails to serve their 'true' intentions." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019) (citing *Petty v. Sloan*, 277 S.W.2d 355, 359 (Tenn. 1955)).

Here, Paragraph 28 provides that the consent decree will "terminate upon the earliest of" either a declaration that the COVID-19 pandemic is over and/or has ended, or:

> (b) an FDA-approved COVID-19 vaccine is offered to and administered according to FDA guidelines to all detainees housed at the Jail for a period of more than fourteen (14) days and who accept a vaccination, along with educational materials about the vaccine and non-punitive incentives to take the vaccine.

R.161-2, PID 3210.

Although Paragraph 28 and the consent decree overall may, as the district court found, have as their "purpose" the implementation of an "effective" vaccination program and the protection of detainees from the dangers of COVID-19, the plain language of Paragraph 28 is more

limited. And the words "meaningful acceptance of the vaccine" do not appear in Paragraph 28. R.258, PID 5066.

All that Paragraph 28 requires is that, together with educational materials and non-punitive incentives, the Jail offer and administer a COVID-19 vaccine "to all detainees housed at the Jail for a period of more than fourteen (14) days and who accept a vaccination." R.161-2, PID 3210. That is not to say, however, that the Jail could satisfy Paragraph 28 by implementing a vaccination program that is not reasonable given the consent decree's overall goals.

Without more guidance, the precise contours of a reasonable vaccination program are left to the sound discretion of the Jail, subject to the plain text of the consent decree and, of course, judicial review. Paragraph 28 does not require a particular outcome, whether in terms of the overall vaccination rate or otherwise, as it appears the district court may have intimated here. The plain terms of Paragraph 28 do not permit us to judge the Jail's compliance with the vaccination requirement based on how "effective" we perceive those efforts to be. To so read the decree's termination provision would be to disregard the consent decree's actual text and to add terms that do not appear there. *See Individual Healthcare Specialists, Inc.*, 566 S.W.3d at 694; *see also Heath*, 1986 WL 18468, at *3. Accordingly, the relevant inquiry here is whether the Jail implemented a *reasonable* vaccination program, including educational materials and incentives, offering a vaccine to all detainees housed at the Jail for more than fourteen days and administering it to all who accepted. To the extent the Jail's efforts were reasonable, it cannot be faulted for a lack of "meaningful acceptance of the vaccine." R.258, PID 5066.

At bottom, the Jail's vaccine-education efforts must be reasonable under the circumstances of the moment. Just as compliance with the vaccination requirement cannot be determined based solely on vaccine acceptance, the same is true of the incentives program. As with the vaccination

program, the overall vaccination rate could potentially shed light on whether the Jail's efforts to educate and incentivize the detainee population have satisfied the minimum threshold of reasonableness. But the ultimate question is whether the Jail has *reasonabl*y satisfied the requirements of Paragraph 28.

**B.**

We now turn to the district court's determination that Respondents failed to show compliance with the consent decree's requirements. The district court reached that conclusion after hearing extensive witness testimony over the course of a two-day evidentiary hearing. And because the district court's factual findings were not clearly erroneous, we affirm.

**1.**

Respondents argue that the district court clearly erred in finding that the Jail failed to offer and administer vaccines to all detainees housed at the Jail for more than fourteen days. They contend that they presented evidence that more than 600 detainees received the vaccine during thirteen sessions and that Petitioners have offered "no proof whatsoever" that any detainee in the Jail has not been offered or has been denied a vaccine. Appellant Br. at 27.

"A finding of fact is clearly erroneous when, after reviewing the full record, we are left with the definite and firm conviction that a mistake has been committed." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 428 (6th Cir. 2020) (internal quotation marks omitted); *see also United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010) ("To be clearly erroneous, . . . a decision must strike this Court as more than just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.") (cleaned up).

In its order denying Respondents' motion to terminate, the district court noted that Petitioners had elicited testimony from Chief Jailer Kirk Fields that no vaccines were administered

during a three-week period in the summer of 2021. The district court observed that this gap, which Respondents "do not attempt to clarify," R.258, PID 5068, is "at least suggestive that there could be detainees who had been at the Jail for more than 14 days, requested the vaccine during that time period, but may have been released before they received it," *id.*, PID 5069. It also noted that the Jail's failure to track who requested and received a vaccine left it with "little to go on." *Id.* On appeal, Respondents argue that the district court's reasoning amounted to a mere "hypothetical" unsupported by evidence. Appellant Br. at 28. But it remains true that Petitioners have offered no evidence of any current or former inmate who desired the vaccine and was not offered it. And that three-week period in summer 2021 cannot be used to keep the consent decree in effect into perpetuity. But as the district court noted, the jail has not submitted any recordkeeping reflecting which inmates requested or received the vaccine.

Respondents instead rely on a handful of statements by Chief Fields during the evidentiary hearing to support their assertion that the Jail offered and administered a COVID-19 vaccine to every detainee who requested one. On the first page of testimony cited by Respondents, Fields testified about how an inmate who first refused a vaccine could then request one. He also testified that although the Jail had initially offered Pfizer vaccines, it later switched to Johnson & Johnson vaccines when they became available. In the second page of testimony cited by Respondents, Fields testified that "over 600 detainees" had received a vaccine and that all detainees had been offered a vaccine since April 2021. R.251, PID 4568. Additionally, in response to the question, "Has any detainee in the jail been prevented from obtaining a COVID-19 vaccine?" Fields stated "No." *Id.* Similarly, he stated "Yes" in response to the question, "Have all detainees who have

been housed longer than 14 days and who have requested a COVID-19 vaccine been provided one?" *Id.*[2]

The first page of testimony Respondents cite contains no information regarding whether all detainees housed at the Jail for more than fourteen days were offered a vaccine and given one if requested. Although slightly more illuminating, the other testimony of Chief Fields on which Respondents rely consists only of bare assertions that the Jail fully complied with Paragraph 28's vaccination requirement. Faced with Fields's conclusory testimony that all eligible detainees were offered and received a vaccine on the one hand, and his later testimony on cross-examination about a gap in vaccinations on the other, the district court made a credibility determination in concluding that the Jail's self-attested compliance was insufficient to negate the possibility that certain detainees who had requested a vaccine did not receive it during the three-week gap in administration.[3] That determination is entitled to deference. *See United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998) ("This court defers to the district court on credibility determinations unless they are 'without foundation.'") (quoting *United States v. Lucas*, 889 F.2d 697, 700 (6th Cir. 1998)).

This is all the more true because Respondents offered no logs or other documentary evidence to corroborate Fields's testimony about the number of detainees who had been offered and received a vaccine. So while it cannot be true that the three-week gap in vaccination can hold

---

[2] Respondents also cite a portion of the transcript involving the following testimony from Chief Fields: "Q. And did all the detainees who indicated a desire to receive the vaccine receive one? A. To my knowledge. I know on the first vaccination date, some individuals who signed yes, when they got down to the vaccine site, they changed their minds. […] Q. And what do detainees have to pay to receive the COVID-19 vaccine? A. There's no cost." R.251, PID 4533; *see* Appellant Br. at 26.

[3] Although this gap in vaccine administration is evidence that the Jail was not in compliance with Paragraph 28's vaccination requirement at the time the district court denied Respondents' motion to terminate, it does not bar the Jail from satisfying this requirement prospectively.

the consent decree in effect forever, the Jail must show some sort of comprehensive recordkeeping as to the offering and uptake of vaccines in its facility for us to consider forgiving its past error. Such a showing has yet to be made.

With "little to go on" beyond Fields's conclusory assertions, *see* R.258, PID 5069, the district court did not clearly err in finding that Respondents failed to demonstrate the Jail's compliance with Paragraph 28's vaccine termination provision.

**2.**

Respondents next argue that the district court erred in finding that the Jail failed to satisfy the consent decree's educational-materials requirement. They note that the Jail provided extensive educational materials to the detainees in various mediums and argue that the district court improperly required them to demonstrate the provision of educational materials to *all* detainees housed at the Jail for more than fourteen days. We conclude that the district court did not clearly err in finding that the Jail failed to satisfy the educational-materials requirement.

The district court was persuaded by Petitioners' evidence that the Jail had "not provided educational materials to every detainee housed at the Jail for more than 14 days." *Id.*, PID 5073. For example, it credited the testimony of several detainee-witnesses who testified that wall posters about the vaccine were unavailable in some housing pods; detainees had not always been allowed outside of their cells for an hour each day, preventing them from viewing educational videos or using kiosks on which information about the vaccine was displayed; kiosks in some pods did not work; not all detainees were able to attend town halls at which information about the vaccine was delivered live and in-person; and "vaccine education materials [are not] readily accessible to inmates." *Id.*, PID 5077–78. The district court determined that "while [the Jail] [is] making various

-14-

attempts to educate the detainees about the vaccine, [its] efforts are not available to all detainees, and beyond this, are not effective." *Id.*, PID 5079.

Respondents argue that they presented "ample proof" that the Jail provided detainees with educational materials about the COVID-19 vaccine in various mediums. Appellant Br. at 29. "Each of these examples," they contend, would "independently satisfy" the decree's educational-materials requirement, which in Respondents' view only requires the provision of educational materials to "detainees who accept a vaccine" and does not "specify what materials must be distributed (or in what format)." *Id.* at 30.

Respondents' contention that educational materials need only be provided to detainees who have already accepted the vaccine makes little sense. We need only look as far as the educational materials themselves to confirm that the requirement was intended to encourage unvaccinated detainees to take the vaccine. During the hearing on the motion to terminate, for example, Respondents introduced "a notice titled 'FREE COVID-19 VACCINE!!!'"; "a one-pager with three reasons why a person should get vaccinated"; "another 2-page document detailing three key reasons to get vaccinated"; and "a compilation of posters encouraging . . . viewers to get the vaccine," among other evidence. R.258, PID 5073–74. At the very least, we find it reasonable to conclude that, when the Jail offered educational materials to detainees, it understood that one of the purposes of the educational-materials requirement was to encourage unvaccinated detainees to get vaccinated. And practically, this makes sense.

Further, the district court did not clearly err in finding that Respondents failed to demonstrate the Jail's compliance with this requirement. The district court noted that, as with the vaccination requirement, the Jail is not tracking who receives particular educational offerings. Such poor recordkeeping makes it impossible to know whether or not materials have been offered

to every inmate. Of course, the Jail need not provide every offering to every inmate uniformly. Different media may be more effective in reaching different cell blocks or inmate populations. And we reject both Petitioners' and the district court's intimations that the effectiveness of the educational materials—presumably tied to the low vaccination rate—is relevant, as we noted above. Whether inmates choose to take advantage of the educational materials is up to them; we will not hold the Jail accountable for inmates' refusal to engage with easily-digestible materials, should the Jail provide them. But, as is true with the Jail's lack of vaccination records, it is unclear how, without meticulous recordkeeping, Respondents can prove which, if any, detainees were provided with educational materials. And such is the case here.

Accordingly, the district court did not clearly err in finding that Respondents failed to demonstrate the Jail's compliance with Paragraph 28's educational-materials requirement.

**3.**

Lastly, we consider whether the district court clearly erred in finding that Respondents failed to demonstrate the Jail's compliance with Paragraph 28's requirement for the provision of non-punitive incentives to take the vaccine. Respondents argue that they "provided extensive proof" that the Jail offered detainees "numerous non-punitive incentives to take the vaccine." Appellant Br. at 32. And, they argue, because Paragraph 28 does not require that all detainees be provided with each type of incentive, the Jail's efforts satisfied the decree's incentives requirement.

During the hearing on the motion to terminate, Respondents introduced testimony from Chief Fields that the Jail had offered detainees incentives including promises not to transfer detainees from their current housing units, fresh fruit on the day of or day after receiving a vaccination, free follow-up medical care, an award of $20 deposited in each vaccinated detainee's

commissary account, and a raffle to win a $100 commissary payment. Petitioners introduced the testimony of several detainee-witnesses, which the district court credited, that they "ha[d] not received this or that incentive." R.258, PID 5080. For example, one detainee-witness testified that he had not seen any printed notices about the $20 incentive, that he knew of one detainee who had received one and one who had not, and that he was unaware of any detainee's receiving a certificate of appreciation that was supposed to be awarded to detainees who accepted the vaccine.

In its order denying Respondents' motion to terminate, the district court found that Petitioners had "created disputes about whether incentives have been offered to every detainee who has been housed at the Jail for more than 14 days," *id.*, PID 5082, and that "[i]n the absence of clear records, the picture that emerges is one of a lack of consistency," *id.* On appeal, Respondents argue that the consent decree does not require the Jail to provide incentives to all detainees housed at the Jail for more than fourteen days—only those that have accepted the vaccine. They contend, moreover, that because the decree does not require "each and every potential non-punitive incentive or even a certain type of non-punitive incentive" to be provided, the Jail easily satisfied this requirement by broadly offering various incentives. Appellant Br. at 34.

First, the only reasonable interpretation of Paragraph 28 is that the Jail must *offer* incentives to the entire population, but need provide them only to detainees who accept the vaccine. The Jail cannot merely dangle an incentive in front of a detainee, only to withdraw it after the detainee gets vaccinated. But reading out of Paragraph 28 any obligation on the part of the Jail to take affirmative steps to encourage vaccination among unvaccinated detainees through incentives would be inconsistent with, and contrary to, the understanding that an "incentive" is "something that incites or has a tendency to incite to determination or action," here, acceptance of a COVID-

19 vaccine. *See incentive*, Merriam-Webster Collegiate Dictionary, https://unabridged.merriam-webster.com/collegiate/incentive.

Respondents also contend that Paragraph 28 does not require that detainees be offered "each and every potential non-punitive incentive or even a certain type of non-punitive incentive." Appellant Br. at 34. That is correct. They further assert that because Petitioners provided no evidence that the Jail failed to provide at least one type of incentive to every detainee that accepted the vaccine, they have demonstrated the Jail's satisfaction of this aspect of the termination provision. However, given the detainees' testimony and the fact that the Jail did not maintain "clear records," R.258, PID 5082, detailing which detainees received which incentives, the district court's factual conclusion that the Jail failed to meet the incentives requirement was not clearly erroneous. Respondents could easily prove this by providing documentary evidence to the contrary, but that evidence is absent from the record.

For these reasons, the district court did not clearly err in holding that the Jail failed to satisfy Paragraph 28's non-punitive incentives requirement.

### III.

Ultimately, the district court denied Respondents' motion to terminate due to a failure of proofs. Critical to its decision was the Jail's failure to maintain complete and accurate records of its efforts to achieve compliance with Paragraph 28's requirements. Without such evidence, the district court determined that it could not verify whether the Jail had offered and administered a COVID-19 vaccine to all eligible detainees. Although this finding was independently sufficient to deny Respondents' motion to terminate, the district court also determined that, based on the sparse evidence before it, Respondents had failed to demonstrate the Jail's compliance with the educational-materials and incentives requirements as well. We find no basis to disturb those

factual findings on appeal. As we noted above, we will not lock Respondents in forever for recordkeeping failures or a short lapse in vaccination offerings. But termination of the consent decree requires more than currently exists in the record.

Although our decision means that the consent decree will continue to remain in effect, Respondents may return to the district court and move for termination once they have gathered sufficient evidence of the Jail's compliance with the decree's termination requirements.

## IV.

For the reasons set forth above, we **AFFIRM** the district court's denial of Respondents' motion to terminate the consent decree.